Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WENDY LOHMEIER,

       Plaintiff,

    vs.                   No. 2019-cv-8136

GOTTLIEB MEMORIAL HOSPITAL and
LOYOLA UNIVERSITY MEDICAL CENTER,

       Defendants.


               The videoconference deposition of TERESA PASQUINI, called by the Plaintiff for examination, pursuant to Notice, and pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken remotely before Joanne M. Gagliardi, a Certified Shorthand Reporter and Registered Professional Reporter on Friday, October , 2021, at the hour of 10:00 o'clock a.m.


REPORTED BY:  Joanne M. Gagliardi, CSR, RPR
LICENSE NO.:  084-002466
JOB NO.:  20682

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

```
                                                       Page 2
  1   APPEARANCES:

  2
          HAHN LOESER & PARKS, LLP
  3       BY MR. EUGENE ENDRESS
          BY MR. PETER KATSAROS
  4       200 West Madison Street
          Suite 2700
  5       Chicago, Illinois  60606
          312-637-3000
  6       eendress@hahnlaw.com
          pkatsaros@hahnlaw.com
  7
              Appeared remotely on behalf of Plaintiff;
  8

  9
          JACKSON LEWIS, P.C.
 10       BY MS. AUDREY GARDNER
          150 North Michigan Avenue
 11       Suite 2500
          Chicago, Illinois  60601
 12       312-787-4949
          audrey.gardner@jacksonlewis.com
 13
              Appeared remotely on behalf of Defendants.
 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24
```

847.551.3460      Precise Kruse Reporting      312.345.1500

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 3

1              I N D E X

2            TERESA PASQUINI

3                                                    PAGE

4   MR. ENDRESS:

5       DIRECT EXAMINATION                              5

6

    MS. GARDNER:
7
        CROSS EXAMINATION                              67
8

9

10

11            INDEX TO EXHIBITS

12  NUMBER          DESCRIPTION                      PAGE

13  Exhibit 7      Human Resources Policy No. 11.13   13

14  Exhibit 32     October 26, 2018, Email Chain      59

15  Exhibit 44     Urine Drug Screen Lab Result       24

16  Exhibit 53     Notice of Deposition                9

17

18

19

20

21

22

23

24

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 4

1              (Prior to the commencement of the

2               deposition, Exhibits 7, 32, 44

3               and 53 were marked for

4               identification.)

5        THE REPORTER:  Good morning.  My name is

6     Joanne Gagliardi.  I am a court reporter with

7     Precise Kruse Reporting.

8            Before we proceed, pursuant to Illinois

9     Supreme Court Rule 206(h) regarding remote

10     electronic depositions, I will ask counsel to

11     agree on the record that there is no objection

12     to this Certified Shorthand Reporter

13     administering a binding oath to the witness

14     remotely.

15            Counsel, please state your name and your

16     agreement on the record.

17        MR. ENDRESS:  This is Gene Endress of Hahn

18     Loeser, counsel for the plaintiff.  We have no

19     objection.

20        MS. GARDNER:  This is Audrey Gardner from

21     Jackson Lewis on behalf of the defendants, and

22     we have no objection.

23              (Witness sworn.)

24

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 9

1      Q.    Ms. Pasquini, I don't want to ask you

2   about any -- the contents of any conversations you

3   had with an attorney, okay.  Don't tell me that;

4   that's privileged.  But leaving that out, can you

5   tell me what you did to prepare for your deposition

6   today?

7      A.    Just got the details of what we were doing

8   today and how to connect and to get ready for this

9   meeting.

10     Q.    Okay.  Did you speak to any nonattorneys

11  in preparation for today's deposition?

12     A.    No, I did not.

13          MR. ENDRESS:  Okay.  Can we bring up

14     Exhibit 53, please.

15  BY MR. ENDRESS:

16     Q.    All right.  Ms. Pasquini, we're displaying

17  on the screen now what we've previously marked as

18  Exhibit 53.  Have you seen this document before?

19     A.    I have not.

20     Q.    Okay.  Well, this is a Notice of

21  Deposition; and as you can see, it has your name on

22  it, has today's date on it.  And it says in the first

23  paragraph there that we're going to "take the

24  deposition of Gottlieb Memorial Hospital through its

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

```
                                                      Page 10
 1   designated representative, Teresa Pasquini, upon oral
 2   examination regarding the matters described in
 3   paragraph 7 in the attached Exhibit A."
 4             Do you see that sentence?
 5        A.    I do.
 6        Q.    Okay.  Do you understand today that you're
 7   going to be testifying on behalf of Gottlieb Memorial
 8   Hospital, the organization?
 9        A.    Yes.
10        Q.    Can we scroll down.  Right here is good.
11   We're on page 5 of this document, and I'm focusing on
12   topic No. 7 here which I'll read into the record.  It
13   says:  "Your" -- meaning Gottlieb's -- "practices and
14   policies relating to employee drug testing, including
15   but not limited to chain of custody requirements for
16   testing samples and lab and testing results from
17   January 1, 2016, to the present."  Do you see that,
18   Ms. Pasquini?
19        A.    Yes.
20        Q.    Are you prepared to testify to that topic
21   today?
22        A.    Yes.
23        Q.    Okay.  Before we get into that can you
24   tell me, are you currently employed at Gottlieb
```

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 11

1    Memorial Hospital?

2          A.    I am, yes.

3          Q.    What's your title there?

4          A.    Employee health nurse.

5          Q.    How long have you been employed as an

6    employee health nurse at Gottlieb?

7          A.    Since the year 2000.

8          Q.    Can you describe for me the job

9    responsibilities of an employee health nurse?

10         A.    Yes.  We make sure that all of the

11   immunization requirements are in place when someone

12   is newly hired.  We administer the flu vaccine.  We

13   take care of work comp, manage the work comp workers'

14   injuries.

15         Q.    Is there anything else you can think of

16   that fall under your job responsibilities, Ms.

17   Pasquini?

18         A.    Oh, we do the flu camp -- we manage the

19   flu campaign for the employees.

20         Q.    Is employee health an official department

21   at Gottlieb?

22         A.    Yes.

23         Q.    Is it called the employee health

24   department?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 12

1       A.      It's called employee health services.

2       Q.      Aside from the --

3                       (Enter Mr. Katsaros.)

4       Q.      Aside from the matters you just mentioned

5   regarding immunization requirements, administering

6   the flu vaccine, managing workers' comp and managing

7   the flu campaign, are there any other initiatives

8   that fall -- that employee health services manages?

9       A.      Well, the safety initiatives, like for

10  slip, trips, falls, patient movement, those are the

11  things we focus on.

12      Q.      Does employee health services have any

13  responsibility for overseeing or managing employee

14  drug testing?

15      A.      We don't manage that, no.

16      Q.      Does Gottlieb Memorial Hospital have any

17  policies specifically relating to employee drug

18  testing?

19      A.      Yes.

20      Q.      And what are those policies, to your

21  knowledge?

22      A.      I don't -- I'd have to look at the current

23  policy.  I don't have knowledge of it off the top of

24  my head.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 13

1      Q.    Okay.  Maybe we can look at some documents

2   and that will help you recall.

3           MR. ENDRESS:  Can we pull up Exhibit 7,

4       please.

5   BY MR. ENDRESS:

6      Q.    Okay.  Ms. Pasquini, I'm showing you what

7   we've previously marked as Exhibit 7.  It is entitled

8   Human Resources Policy No. 11.13 for Gottlieb

9   Memorial Hospital.  The subject is Alcohol and Drug

10  Use/Abuse.

11           Is this a policy at Gottlieb that

12  concerns employee drug testing to your knowledge?

13     A.    Yes.

14           MS. GARDNER:  Wait.  Objection as to form.

15       Gene, can you scroll and let her look at all

16       pages of the document before she responds?

17           MR. ENDRESS:  Yes, sure.

18  BY MR. ENDRESS:

19     Q.    And Ms. Pasquini, for future reference if

20  you need to examine a document more carefully before

21  answering, please just tell me and I'll be happy to

22  do that.  Would you like to look at this document --

23     A.    Yes.

24     Q.    -- more thoroughly before you respond?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 14

1      A.   Yes.  Could you not move it so quickly.

2   Thank you.  (Witness examines document.)

3      Q.   Okay, Ms. Pasquini, so to back up, first

4   of all, is this policy, human resources policy No.

5   11.13 shown here in Exhibit 7, in force at Gottlieb

6   Memorial Hospital?

7           MS. GARDNER:  Objection as to form.

8       Teresa, you can answer if you know.

9           THE WITNESS:  It is the policy.

10  BY MR. ENDRESS:

11      Q.   Okay.  I guess my real question is:  Was

12  this policy in force at Gottlieb Memorial Hospital on

13  October 12, 2018?

14      A.   Yes.

15      Q.   Okay.  I'd like to direct your attention

16  to Roman numeral which begins on Bates page DEF00029.

17  Do you see that?

18      A.   I'm sorry.  I don't see any numbers.

19      Q.   It's labeled page 2 of 4 of the document.

20  Can you see that?

21      A.   Oh, yes.  Okay.

22      Q.   Okay.  And when I make a reference to a

23  Bates number, what I'm talking about is the number in

24  the lower right-hand corner.  In this case it begins

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 15

1    with capital DEF.  Do you see that?

2          A.    I do.

3          Q.    Okay.  So going forward here today, when I

4    talk about a Bates number, that's what I'm referring

5    to, okay?

6          A.    Okay.

7          Q.    Okay.  So I want to look at the third

8    paragraph in Roman numeral III here.  It says:  "When

9    there is reason to believe that this policy is being

10   violated, it is required that the suspected violation

11   be immediately reported to the department manager or

12   the nursing supervisor (off-shifts).  Possible

13   observations may include, but are not limited to,"

14   and then it lists a number of physical symptoms.

15                Do you see that?

16         A.    I do.

17         Q.    Now let's go to the next page, page 3 of

18   4.  In the top paragraph it says that the department

19   manager or nursing supervisor has the responsibility

20   to respond to the situation by interviewing the

21   employee.  I'm paraphrasing here.  And then it says:

22   "In consultation with human resources, any employee

23   suspected of violating this policy may be required to

24   report to employee health services (or the emergency

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 16

1    department on off-shifts), on hospital time and at

2    the hospital's expense for a fitness-for-duty

3    examination."

4                    Do you see that?

5         A.    I do.

6         Q.    Okay.  And then it says that the

7    fitness-for-duty examination, quote:  "Will include,

8    but is not limited to, appropriate testing," end

9    quote.  Do you see that?

10        A.    Yes.

11        Q.    Okay.  Is it the -- based on this

12   document, based on what we just read, is it the

13   policy at Gottlieb Memorial Hospital that an employee

14   subjected to a fitness-for-duty examination under

15   this policy must be drug tested?

16        A.    Can you scroll up again to the other

17   paragraph, the other Roman numeral III.

18                    Okay.  You can go back down to the

19   third page.  Okay.

20                    Can you repeat the question?

21        Q.    Yeah.  My question is:  Is it the policy

22   at Gottlieb that an employee subjected to a

23   fitness-for-duty examination must be drug tested?

24        A.    I'm not sure.  I don't see where it says

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 17

1    they must be.  It would depend on --

2         Q.    Well, what I'm looking at is that the

3    policy says that the fitness-for-duty examination,

4    quote:  "Will include appropriate testing."  Maybe a

5    better question is this:  As used in this policy,

6    what do the words "appropriate testing" mean?

7         A.    Well, can you ask your first question

8    again?  I think it's confusing me, "appropriate

9    testing."  I don't want to speculate to what someone

10   might consider appropriate.

11        Q.    Okay.  Well, maybe I can reorient us a

12   little bit, okay.

13              As I read this, the policy says that

14   an employee subjected to a fitness-for-duty

15   examination, when that happens, the fitness-for-duty

16   examination will include appropriate testing.  Do you

17   see that?

18        A.    Yes.

19        Q.    Okay.  So would you agree with me that a

20   fitness-for-duty examination must include some kind

21   of testing?

22        A.    Yes.

23        Q.    And now I'd like to get a better

24   understanding of what might be included in the

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 18

1    testing that's a part of the fitness-for-duty

2    examination, okay?  Does that make sense?

3         A.    Yes.

4         Q.    So is drug testing one of the things that

5    might be included as, quote unquote, appropriate

6    testing in a fitness-for-duty examination?

7         A.    Yes.

8         Q.    Is there anything other than drug testing

9    that might be considered appropriate testing in a

10   fitness-for-duty examination?

11        A.    Yes.

12        Q.    Okay.  What other kinds of tests would

13   fall into the category of appropriate testing to

14   conduct as part of a fitness-for-duty examination?

15        A.    Alcohol.

16        Q.    Okay.  An alcohol test?

17        A.    Yes.

18        Q.    Is there anything other than an alcohol

19   test or a drug screening test that might qualify or

20   fall into the category of appropriate testing that's

21   a part of a fitness-for-duty examination?

22        A.    Not that I'm familiar with.

23        Q.    Okay.  Now, just focusing on the drug

24   screening tests, okay, are there different kinds of

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 19

1    drug screening tests that can be administered as a

2    part of a fitness-for-duty examination?

3         A.    I'm not sure what you mean.

4         Q.    Well, I'm not a scientist, but I imagine

5    that there are different ways to scientifically test

6    whether a person has drugs in their system.  Is that

7    your understanding as well?

8         A.    Well, I'm not a scientist either, so I

9    mean --

10        Q.    Okay.  Well, let me just ask you about

11   Gottlieb's policies.  At Gottlieb does Gottlieb use

12   multiple kinds of drug screening tests as a part of a

13   fitness-for-duty examination, or is there just one

14   kind of drug screening test that Gottlieb employs

15   when it conducts a fitness-for-duty examination?

16        A.    I'm not sure.  I don't know.

17        Q.    Okay.

18             MS. GARDNER:  Gene, can we take a quick

19        five-minute break.

20             MR. ENDRESS:  Sure.

21                  (Whereupon a recess was taken from

22                   10:31 a.m. to 10:37 a.m., after

23                   which the preceding deposition

24                   continued as follows:)

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 20

1              MR. ENDRESS:  Okay.  Let's go back on the

2       record.

3    BY MR. ENDRESS:

4       Q.    Ms. Pasquini, before our break I asked you

5    when Gottlieb conducts a fitness-for-duty examination

6    that includes a drug screening test, are there

7    different kinds of drug screening tests that Gottlieb

8    can administer as a part of that process, do you

9    remember that?

10      A.    Yes.

11      Q.    And you responded that you didn't know; is

12   that right?

13      A.    That is how -- yes.

14      Q.    Okay.  Now, is that still the case, you

15   don't know the answer to that question?

16      A.    So can you repeat the question?

17      Q.    Yeah.  My question is just:  When Gottlieb

18   administrators a urine drug screening test as a part

19   of a fitness-for-duty examination, are there

20   different kinds of urine drug screening tests it can

21   employ?

22      A.    Yes.

23      Q.    Okay.  Can you tell me what those

24   different kinds of tests are?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 21

1      A.    Well, there are urine specimens that would

2   be obtained and in -- it would -- you can do -- I'm

3   not sure what -- you can do a drug screen panel, and

4   you can do a drug screen quantitative panel.

5      Q.    Those are both urine tests; is that right?

6      A.    Yes.

7      Q.    Okay.  Other than a drug screen panel and

8   a drug screen quantitative panel, are there any other

9   urine drug tests that can be administered as a part

10  of a fitness-for-duty examination at Gottlieb?

11     A.    Not that I'm familiar with.

12     Q.    Okay.  Other than urine tests, are there

13  any other kinds of drug tests that Gottlieb employs

14  during a fitness-for-duty examination?

15     A.    Other than, as I mentioned, the alcohol

16  testing.

17     Q.    Okay.  What does the alcohol testing

18  entail at Gottlieb?

19     A.    The alcohol testing is a blood alcohol

20  level.

21     Q.    So how is the test administered?

22     A.    A blood sample has to be taken, an

23  intravenous blood sample.  I'm sorry.

24     Q.    Okay.  So for the alcohol test somebody

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 22

1   uses a syringe or some other method to take some of

2   your blood, right?

3        A.    It's a phlebotomy kit.

4        Q.    So is the blood test -- let me start over.

5              Does Gottlieb test for anything other

6   than alcohol using a blood-based test?

7        A.    Not to my knowledge.

8        Q.    Okay.  So other than the two kinds of

9   urine drug tests that we mentioned and the

10  blood-based alcohol test that we mentioned, are there

11  any other kinds of drug screening tests that Gottlieb

12  employs as a part of its fitness-for-duty

13  examinations?

14       A.    Not that I'm familiar with.

15       Q.    All right.  Let's focus on the urine drug

16  screen tests.  Can you tell me what the difference is

17  between just a drug screen panel and a quantitative

18  drug screen panel?

19       A.    The drug screen panel will show if there

20  are drugs showing in the urine, if there's drugs

21  detected.  The quantitative panel will give you a

22  measurement of how much was in the urine at the time

23  the specimen was given.

24       Q.    So is it fair to say that for the regular

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 23

1    drug screen panel it just says with respect to a

2    particular drug, yes, this drug is present or, no,

3    this drug is not present?

4         A.    Yes.

5         Q.    And from the regular drug screen panel you

6    can't tell how much of a drug is in a person's

7    system; is that right?

8         A.    Yes.

9         Q.    And is it possible that for -- let me

10   start over.

11              Is it possible that when you see the

12   results of a regular drug screen panel and the drug

13   screen panel results show that a particular drug is

14   present in a person's urine, there's such a small

15   amount of the drug present in the urine that it

16   wouldn't have any effect on the testee's behavior?

17              MS. GARDNER:  Objection as to form.

18   BY MR. ENDRESS:

19        Q.    You can still answer the question.

20        A.    Oh, okay.  I'm sorry.  I wouldn't -- I

21   wouldn't know.  I couldn't speculate on that because

22   I'm not sure.  I think you'd have to be a scientist.

23   I don't know how much would -- I think it's

24   individual too.  It would depend on someone's weight.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 24

1    There's a lot of factors that I'm not -- wouldn't be

2    able to answer that.

3         Q.    Okay.  Now, focusing on the quantitative

4    panel, you said that that test can tell you how much

5    of a particular drug is in a person's system; is that

6    right?

7         A.    Yes.

8         Q.    And using the quantitative panel, can you

9    tell how much of a drug a particular person

10   administered to themselves prior to the test?

11        A.    I don't believe so.  I don't believe that

12   you can tell how much was administered.  I believe it

13   tells you that there's X amount in their system at

14   the time of the test, but I don't -- I wouldn't be

15   able to by looking at that say you took this dosage

16   at this time.

17        Q.    Why don't we look at another exhibit.

18   Apologies, it's going to just take a minute to find

19   the right number here.  I appreciate your patience.

20              Let's look at Exhibit 44, please.

21   BY MR. ENDRESS:

22        Q.    Okay.  Ms. Pasquini, we're showing you

23   what we've previously marked as Exhibit 44.  Why

24   don't you take a look at the document.  It's only two

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 25

1    pages, and then I'm going to ask you some questions

2    about it, okay?

3         A.    Okay.

4               THE REPORTER:  Just tell me when you want

5         me to scroll down.

6               THE WITNESS:  You can scroll down.

7         (Witness examines document.)  Okay.

8    BY MR. ENDRESS:

9         Q.    Okay.  So Ms. Pasquini, looking at this

10   document can you tell me what it is?

11        A.    This is a urine drug screen lab result.

12        Q.    Okay.  And is this a result for a regular

13   urine drug panel or a quantitative urine drug panel?

14        A.    It looks like it's a regular drug panel.

15        Q.    So by looking at this, you can't tell how

16   many drugs or how much of a particular controlled

17   substance is in this person's system; is that fair to

18   say?

19        A.    Well, if you scroll down, you can see

20   it's -- at least with the opiates it gives you a

21   cutoff.  So it's confirming it's positive.

22        Q.    Okay.  So we're on page DEF000037 right

23   now, right?

24        A.    Yes.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 26

1      Q.    And if I understand your testimony, you're

2  directing us to this table kind of just under the

3  halfway mark on the page; is that right?

4      A.    Yes.

5      Q.    And it's got a number of controlled

6  substances and then a column on the right-hand side

7  that says Cut Off, correct?

8      A.    Right.

9      Q.    And in the cutoff column the units are

10 NG/ML.  Do you see that?

11     A.    Yes.

12     Q.    And what does -- when you see NG/ML, what

13 does that mean to you?

14     A.    I don't know what that stands for.

15     Q.    Okay.

16     A.    I'd have to look it up.

17     Q.    All right.  If we look at this same table,

18 do you see where it says opiates?

19     A.    Yes.

20     Q.    And it says that there's a cutoff of 300.

21 Do you see that?

22     A.    Yes.

23     Q.    So would it be fair to say then that if

24 this test shows a positive result for opiates, that

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 27

1    means that the patient has more than 300 of whatever

2    unit this is in their urine; is that right?

3         A.    Can you say that again?

4         Q.    Yeah.  So I'm trying to interpret what

5    this table says, okay.  So when you see that opiates

6    have a cutoff of 300 in the table, what does that

7    mean to you?

8         A.    It means that there was substance in the

9    urine that could be detected to call it a positive.

10        Q.    And does that mean that -- so to call this

11   a positive then, does that mean that this patient

12   would have to have more than 300, you know, NG/ML of

13   opiates in their urine?

14        A.    They would have to have at least 300.

15        Q.    Okay.  And if they had less than 300, that

16   would be classified as a negative test result?

17        A.    If it didn't show.  If it didn't show as a

18   positive, but it's calling it a positive so ...

19        Q.    Oh, yeah, I understand.  I'm talking in

20   the abstract.  I'm trying to figure out what would

21   count as a positive result under this test and what

22   would count as a negative, okay?

23        A.    I can only say if the substance wasn't

24   detected, it would be a negative.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 28

 1      Q.    So I guess my question is:  If this --
 2   let's say that this column on the right, the cutoff
 3   amount is milliliters, okay?  Can we make that
 4   assumption for now?
 5      A.    Okay.
 6      Q.    Okay.  So if this patient had 200
 7   milliliters of opiates in their urine, would this be
 8   counted as a positive test?
 9      A.    Well, I can't say factually.  I'm going to
10   say that if it was under, I don't think that the lab
11   would pick it up, so it would have been a negative.
12   But if the lab picked it up, I would have to say it
13   was at the level that it could detect it.
14      Q.    Okay.  So is it your testimony then that
15   if the patient had less than the cutoff amount, the
16   test might not detect the presence of that substance
17   in the patient's system?
18      A.    Yes.
19      Q.    Is it possible that the test would detect
20   the presence of opiate in a patient's system even if
21   they had less than 300 milliliters?
22            MS. GARDNER:  Objection as to form.
23            THE WITNESS:  I don't know.  I would
24      assume not, but that's an assumption.  I don't

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 29

1      know.  It would depend on --

2  BY MR. ENDRESS:

3      Q.    So you don't know one way or the other?

4      A.    I can't -- I can't really say because I

5  would base it on that the test is, you know, going to

6  show if it's not in there, it's not going to show it;

7  and if it's at a level that it could be detected,

8  then it's going to be a positive.

9            So I think what you asked me is if it

10  was less, that it's not going to show it.  Maybe I

11  misunderstood.  Maybe you can repeat the question.

12      Q.    Sure.  First of all, focusing again on

13  this cutoff unit, it's NG over ML.  So does that mean

14  nanograms over milliliters?

15      A.    I'm not sure what the measurement is.

16  Honestly I'd have to look that up.  I'm not familiar

17  with how they're measuring it.

18      Q.    Going back to my question though, let's

19  assume this means nanograms per milliliter, okay?  My

20  question is this:  If this patient who was tested

21  using this test had less than 300 nanograms per

22  milliliter of opiates in their system, is it possible

23  that the test would nevertheless report the presence

24  of opiates in her urine?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 30

 1          MS. GARDNER:  Objection as to form.

 2          THE WITNESS:  Should I answer?

 3          MS. GARDNER:  Yes.  Just for

 4     clarification, unless I specifically instruct

 5     you not to answer, you need to just proceed and

 6     answer after I state my objection for the

 7     record.

 8          THE WITNESS:  Okay.  I would say that --

 9     you want to know if there was less?

10 BY MR. ENDRESS:

11     Q.    Yeah.  To be clear, I don't want you to

12 speculate.  If you know the answer, tell me.  If you

13 don't know the answer, then just say so, okay?

14     A.    I'm going to say if it was less, I think

15 it would be no, it wouldn't pick it up.

16     Q.    Okay.  Do you think or are you speculating

17 right now?

18     A.    Well, we don't have a test that showed

19 less, so it's -- I don't know for sure.  I mean I can

20 only tell you based on -- so, no.  Then, no.  I don't

21 know is my answer.  I don't know.

22     Q.    Now, if we look at the results for this

23 particular test, it reports the presence of opiates

24 as positive; is that right?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 31

1      A.    Yes.

2      Q.    Does that mean that this test is showing

3   that this patient does have opiates in their urine?

4      A.    Yes.

5      Q.    Can you tell from the positive result on

6   this test how -- what the concentration of opiates is

7   in their urine?

8      A.    No.

9      Q.    Can you tell anything about the quantity

10  of opiates in this patient's urine?

11          MS. GARDNER:  Objection as to form.

12          THE WITNESS:  No.

13  BY MR. ENDRESS:

14     Q.    From this test?

15     A.    No.

16     Q.    Can you distinguish based on these test

17  results between what different kinds of opiates might

18  be present in this patient's urine?

19     A.    No.

20     Q.    Is there a test that Gottlieb can

21  administer that would distinguish between the

22  different kinds of opiates in a patient's urine?

23     A.    I don't recall if there is a test that

24  will specifically drill down that we do of what

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 32

1    specific substance it was.  It would just break it --

2    I mean you would just I believe look at the

3    categories of what fell under an opiate or

4    amphetamine.

5        Q.    Okay.  So to be clear, my question is:

6    Does Gottlieb have a test it can administer that will

7    tell you which kind of opiate a patient has in their

8    system, and I think your answer was that you don't

9    know; is that correct?

10       A.    I -- I don't believe.  I believe it just

11   will categorize it.  I'm not familiar.  It's been a

12   long time.  I don't know that it -- I don't recall

13   that it ever breaks down that you could say it was

14   this particular substance in the testing that we do.

15       Q.    Okay.

16           MS. GARDNER:  I'm sorry, Gene.  Can we

17       just take another two-minute break.  I have a

18       sinus infection.  I'm having some issues.

19           MR. ENDRESS:  Sure, absolutely.  That's

20       okay.

21                   (Whereupon a recess was taken from

22                   10:57 a.m. to 11:03 a.m., after

23                   which the preceding deposition

24                   continued as follows:)

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 33

1          MR. ENDRESS:  Okay.  Let's go back on.

2     BY MR. ENDRESS:

3          Q.   Ms. Pasquini, can I direct your attention

4     to the upper left-hand corner of Exhibit 44.  This is

5     on page 1 of 2.  It says 10-12-2018 at 9:15 p.m.  Do

6     you see that?

7          A.   Yes.

8          Q.   What does that mean to you?

9          A.   That the test was taken at 9:15 p.m. on

10    October 12th.

11         Q.   And when you say "the test was taken,"

12    what do you mean by that?

13         A.   Or I'm sorry.  I think these were results.

14    I believe that the results were provided at 9:15 p.m.

15    on the 12th.

16         Q.   Okay.  Can you go down to the second page

17    of this document, page 2 of 2.  Focusing on the upper

18    left hand portion of this page 2, do you see where it

19    says:  "Status:  Final result collected," and then

20    below that it says 10-12-2018, 20:45?

21         A.   Yes.

22         Q.   What do you interpret that language to

23    mean in this document?

24         A.   That this is the status, it's the final

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 34

1    result and that it is -- it was collected at I think

2    8:45 p.m., 20:45 in military time.

3         Q.    What does it mean for a test to be

4    collected?

5         A.    When they obtained the specimen.

6         Q.    So do you interpret this language in the

7    exhibit to mean that the particular specimen analyzed

8    in this exhibit was collected at 8:45 p.m.?

9         A.    Yes.

10        Q.    Okay.  I want to talk a little bit more

11   about the distinction we made earlier between an

12   ordinary urine drug screen and an -- or I think you

13   called it a regular drug panel and a quantitative

14   drug panel?

15        A.    Yes.

16        Q.    Am I using the correct terms, Ms.

17   Pasquini?

18        A.    Yes.

19        Q.    Okay.  And it was your testimony earlier

20   today that Gottlieb might employ either one of those

21   tests as a part of a fitness-for-duty examination; is

22   that right?

23        A.    Yes.

24        Q.    Does Gottlieb have a policy regarding when

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 35

1   to use which of those tests?

2        A.    I don't think there's a policy for that.

3        Q.    Okay.  Who makes the decision about which

4   of those tests to administer as part of a

5   fitness-for-duty exam?

6        A.    Well, that's the only test that I have

7   available that I have access to in employee health.

8        Q.    Can you explain what you mean by that?

9   I'm not sure I follow.

10       A.    Well, in the emergency room they have

11  access to ordering labs.  I don't have that.  So I

12  only have one type of collection that I can do.

13       Q.    Okay.  Yeah, I understand that you may be

14  personally limited, but ... if we go back to Exhibit

15  7, page 3 of 4.  You're welcome to read the document,

16  but I'm going to read the part that I'm interested in

17  now.

18             This is page 3 or 4, Exhibit 7.  It

19  says:  "In consultation with human resources, any

20  employee suspected of violating this policy may be

21  required to report to employee health services (or

22  the emergency department on off-shifts), on hospital

23  time and at the hospital's expense, for a

24  fitness-for-duty examination."

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 36

1              Do you see that?

2      A.    Yes.

3      Q.    Okay.  So I interpret that to mean that

4  the fitness-for-duty examination mentioned in this

5  policy might occur in employee health services or on

6  off-shifts it might occur in the emergency

7  department; is that right?

8      A.    Yes.

9      Q.    Okay.  So you are in the emergency -- or,

10  sorry.  You work in employee health services, right?

11      A.    Yes.

12      Q.    And did you say in employee health

13  services you only have one drug screening test

14  available to you?

15      A.    Yes.

16      Q.    And what drug screening test is that?

17      A.    It was -- I don't know the exact name.  It

18  was a Quest six-panel rapid drug screen.

19      Q.    And is that the nonquantitative urine drug

20  screen test?

21      A.    If it were positive on the rapid, we would

22  send it out and our report would be quantitative.

23      Q.    All right.  Let's break that down a little

24  bit.  So the test that you would administer in

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 37

1    employee health services would be the nonquantitative

2    test; is that right?

3              MS. GARDNER:  Objection as to form.

4              THE WITNESS:  It would have been a rapid

5         six-panel drug screen.  If the test result was

6         positive, then it would be sent out to the lab

7         and it would return a quantitative result.

8    BY MR. ENDRESS:

9         Q.    I think I follow you but I just want to be

10   clear.  The actual test that the personnel in

11   employee health services would administer as part of

12   a fitness-for-duty examination would be

13   nonquantitative, right?

14             MS. GARDNER:  Objection as to form.

15             THE WITNESS:  If the rapid drug screen

16        that we used had a positive result, it would be

17        sent to the lab for further confirmation.  The

18        result returned would have been a quantitative

19        result.

20   BY MR. ENDRESS:

21        Q.    Okay.  So let me make sure I understand.

22   An employee comes to emergency health services as

23   part of a fitness-for-duty examination and as part of

24   that, they're administered a urine drug screen by

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 38

1    employee health services, okay.  Do you understand my

2    hypothetical here?

3          A.    But you said if they went to emergency.

4    Do you mean if they went to employee health.

5          Q.    Okay.  Yeah, I do.  I apologize if I've

6    been misspeaking.

7                All right.  Let me try and get it

8    right this time.  Apologies.

9                Let's say an employee comes to

10   employee health services for a drug screen as part of

11   a fitness for duty test, okay?  In that instance you

12   mentioned that employee health services would only

13   have one test, one urine drug screen they could

14   administer to that employee; is that right?

15         A.    Yes.

16         Q.    And is that the Quest six-panel rapid drug

17   screen test you mentioned?

18         A.    Yes.

19         Q.    Now, that Quest six test, my question is:

20   Is that a quantitative test or a nonquantitative

21   test?

22         A.    So if the result -- the rapid result was

23   positive, we would send that specimen to the lab for

24   further confirmation, and the result would be

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 39

1   quantitative.

2        Q.    Okay.  So you'd get a urine sample from

3   the employee, correct?

4        A.    Yes.

5        Q.    And you'd run the Quest six-panel rapid

6   drug screen, correct?

7        A.    Yes.

8        Q.    And then that Quest six panel would tell

9   you this drug is present or this drug is not present,

10  right?  Sorry.  That's a bad question.

11             The Quest six panel itself will not

12  tell you quantitatively how much of a controlled

13  substance was in the employee's urine, correct?

14       A.    Correct.

15       Q.    And then what you're saying is if the

16  Quest six indicated the presence of a controlled

17  substance in the employee's urine, then emergency

18  health services would send the employee's urine

19  sample somewhere else to have a quantitative test

20  performed; is that correct?

21       A.    Yes, employee health services would send

22  it.

23       Q.    Okay.  And where would you send the urine

24  sample to have the quantitative testing performed?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 40

1           A.      To Quest Labs.

2           Q.      Okay.  And then Quest Labs would analyze

3     the urine sample and give you quantitative results;

4     is that right?

5           A.      Yes.

6           Q.      In other words, the results you get back

7     from Quest Labs would tell you how much of a given

8     controlled substance was in the employee's urine; is

9     that right?

10          A.      Yes.

11          Q.      How long does it take to get testing

12    results back from Quest Labs on a quantitative urine

13    drug screen?

14          A.      It could take 24 hours.

15          Q.      All right.  Now, everything we've been

16    talking about concerns drug testing performed by

17    employee health services, right?

18          A.      Yes.

19          Q.      All right.  So let's focus instead on what

20    would happen if an employee undergoes a urine drug

21    screen in the emergency department instead of

22    employee health services, okay?

23          A.      Okay.

24          Q.      So in this scenario where an employee is

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 41

1    taken to the emergency department and asked to

2    undergo a urine drug screen, does the emergency

3    department have the ability to administer a

4    quantitative drug panel to that employee?

5         A.    I don't know.  I don't know what the

6    emergency room -- I don't know what their ability of

7    what they can order.  I don't know what's available

8    to them.

9         Q.    So as you sit here today, you don't know

10   whether the emergency department at Gottlieb has the

11   ability to give a quantitative urine drug screen to

12   an employee during a fitness for duty test; is that

13   right?

14        A.    I'm not familiar with their order set.  I

15   really don't know what -- I don't know what their

16   order set is.  I mean I'm not sure.  I mean I could

17   say they probably could, but I really don't know.

18   I'm not familiar with --

19        Q.    I don't want you to speculate.  If you

20   don't know, just say you don't know?

21        A.    I don't know.

22        Q.    Do you know whether the emergency

23   department has the ability to administer a

24   nonquantitative urine drug screen on site?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 42

1     A.    Yes.

2     Q.    Does that mean yes, they do?

3     A.    Oh, yes, they do.

4     Q.    And the nonquantitative urine drug screen
5 that the emergency department uses, do they use the
6 same Quest six-panel rapid drug screen that's used in
7 employee health services?

8     A.    I don't believe so.  I don't know, but I
9 don't believe that they use a rapid.

10    Q.    Okay.  How quickly does the Quest six
11 panel rapid drug screen test produce results?

12    A.    The rapid -- when we're doing it or when
13 we send it out.

14    Q.    When you first do the rapid test, the
15 nonquantitative test, my question is:  How long does
16 it take to run that test before you can get results
17 back for the patient?

18    A.    The result is within eight minutes.

19    Q.    And you're saying you don't know whether
20 the emergency department uses a rapid test; is that
21 right?

22    A.    Yes.

23    Q.    And if the emergency department uses a
24 nonrapid, nonquantitative test, how long would it

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 43

1    take to run the nonrapid version of that urine drug

2    screen test?

3         A.    Oh, I have no idea how long it takes to

4    get results for a lab test.  I wouldn't be qualified

5    to answer that.

6         Q.    If the emergency department runs a

7    nonquantitative drug screen on an employee and the

8    nonquantitative test comes back positive, is it the

9    policy in the emergency department to then run a

10   follow-up quantitative test?

11        A.    I'm not aware.  Not to my knowledge, but I

12   really don't know.

13        Q.    And as you sit here today, are you aware

14   of any policy that explains when the emergency

15   department is supposed to run a quantitative test

16   versus a nonquantitative test in a fitness-for-duty

17   exam?

18        A.    No.

19        Q.    No, as in you don't know one way or the

20   other?

21        A.    I'm not aware of that existing.

22        Q.    Okay.  Let's focus again on employee

23   health services, okay.  If an employee comes to you

24   as part of a fitness-for-duty exam in employee health

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 44

1   services and a urine drug screen needs to be

2   administered, do you approach the situation any

3   differently if that employee tells you, listen, I

4   have a prescription for a controlled substance, and I

5   just want to let you know that may show up on my drug

6   test?

7         A.    No, it would be handled the same way.

8         Q.    Are you aware of any policy at Gottlieb

9   that makes a distinction between which urine drug

10  screen needs to be administered on the basis of

11  whether the employee has a prescription that might

12  cause a positive result?

13        A.    No.  It's the same drug screen.

14        Q.    Are you familiar with the term chain of

15  custody?

16        A.    Yes.

17        Q.    What do you understand that term to mean?

18        A.    The chain of custody just maintains that

19  the specimen was obtained, witnessed and sealed and

20  sent off to -- for confirmation.

21        Q.    Okay.  So does Gottlieb have a written

22  policy setting forth chain of custody requirements

23  for a urine drug screen?

24        A.    I don't believe so.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 45

1       Q.    Does Gottlieb have a general policy
2   addressing chain of custody requirements for a
3   urine-based medical test?
4       A.    I'm not familiar with it.
5       Q.    Are you familiar with best practices
6   relating to chain of custody for a urine-based
7   medical test?
8           MS. GARDNER:  Objection as to form.
9           THE WITNESS:  I'm not familiar with that
10          terminology.
11  BY MR. ENDRESS:
12      Q.    Okay.  Do nurses, for instance, at
13  Gottlieb receive training about ensuring chain of
14  custody for a urine sample?
15      A.    I'm not a part of that so I'm not sure if
16  they get any special training for that.  I'm familiar
17  with it because that's what I use.
18      Q.    Okay.  Do you, as an employee health
19  systems nurse receive special training regarding how
20  to ensure chain of custody for a urine sample?
21      A.    Yes, when we use that -- you know, when we
22  started to use that particular test, we were trained.
23      Q.    Okay.  Can you describe to me what you're
24  trained to do to ensure chain of custody for a urine

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 46

1  sample?

2     A.    You know, how to -- how you are going to

3  collect the specimen and fill out, you know, there's

4  a special form that we use for chain of custody that

5  the person being tested and the person providing the

6  test would fill out and then seal the specimen and

7  send it off.

8     Q.    Okay.  Let's talk about the actual vessel

9  that the urine sample goes into.  Can you describe

10  what that is in the employee health services?

11     A.    Sure.  It was just the specimen cup that

12  the urine was collected in.

13     Q.    Is it like a plastic cup?

14     A.    Plastic cup.

15     Q.    Does the plastic cup have a label on it?

16     A.    The plastic cup has the -- had the rapid

17  test, you know, on it so that you could see if it was

18  positive or negative, and then it would be sealed

19  with a label with the person being tested, with their

20  identity.

21     Q.    So before the cup is given to a patient it

22  doesn't have any patient's name or identifying

23  information on it; is that right?

24     A.    Correct.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 47

1       Q.    And at what stage in the process is the

2  patient's name or identifying information affixed to

3  the sample cup?

4       A.    When the specimen is sealed.

5       Q.    Okay.  So the patient puts their urine

6  sample in the cup, right; and then when they are done

7  with that, does the patient seal the cup on their

8  own?

9       A.    They can put the lid on.  We would check

10  to make sure it was tightened.

11       Q.    And is the patient by themselves when they

12  give the urine sample?

13       A.    Yes.

14       Q.    So the patient comes out of the room then

15  with their urine sample, and let's say the patient's

16  already put the lid on it, okay.  Then what's the

17  next step in the chain of custody?  Where does the

18  patient --

19       A.    The seal goes -- the seal goes on the

20  label.  So we would do it right where the specimen

21  was being collected.

22       Q.    And who puts the seal on to the cup?

23       A.    The nurse.

24       Q.    And that seal has the patient's

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 48

1    identifying information on it, right?

2         A.    Correct.

3         Q.    And that way you know that that urine

4    sample belongs to that patient, right?

5         A.    Correct.

6         Q.    And this happens immediately after the

7    patient comes out of the room with their sample,

8    correct?

9         A.    Yes.

10        Q.    Is the cup sealed at the same time that

11   the label with the patient's information on it is

12   attached?

13        A.    Yes.

14        Q.    Does the patient witness the label being

15   put on to their urine sample?

16        A.    Yes.

17        Q.    Does the patient witness the sample being

18   sealed?

19        A.    Yes.

20        Q.    And then you mentioned that there's a form

21   that needs to be filled out; is that right?

22        A.    Yes.

23        Q.    And what information is on that form?

24        A.    The patient's information is on the form,

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 49

1    their identity, the number of the specimen so that it

2    matches the actual specimen itself, and then the

3    label also comes off of that form.

4         Q.    Is the patient present while this form is

5    being filled out?

6         A.    Yes, they fill out a portion of it.

7         Q.    And does the form need to be signed by

8    anybody?

9         A.    Yes.

10        Q.    Does it need to be signed by the patient?

11        A.    Yes.

12        Q.    And does the form also need to be signed

13   by someone who works at Gottlieb?

14        A.    It needs to be signed by the person

15   collecting the specimen.

16        Q.    Okay.  And then what do you do with the

17   specimen after the form has been filled out and the

18   specimen's been sealed?  Where do you put the

19   specimen next?

20        A.    It goes into a bag, a specimen bag that

21   gets sealed again; and there's a label that comes off

22   of that form, a tracking label, because it's going to

23   go out by courier.

24        Q.    And that's the specimen that gets sent to

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 50

1    the lab if there's a positive result on the instant

2    test; is that right?

3         A.    Correct, correct.

4         Q.    Is there a place in the emergency health

5    services facility where these samples are kept before

6    they're sent out?

7         A.    No.  We used a lab box that was provided

8    by Quest, a locked lab box, and we would bring the

9    specimen there.  It was in our professional building.

10        Q.    Let's say that the initial nonquantitative

11   test produced a negative result, okay.  In that

12   instance do you still send the specimen to Quest?

13        A.    No.

14        Q.    Okay.  What do you do with the specimen if

15   there's a negative result?

16        A.    It gets discarded.

17        Q.    What does that mean?

18        A.    Thrown out.

19        Q.    Do you pour it down a drain, throw it in

20   the garbage?  How do you get rid of the specimen?

21        A.    No, we don't open it.  We would discard it

22   in a biohazard container.

23        Q.    Okay.  Do you have to fill out a form when

24   you discard a urine sample?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 51

1      A.     No.

2      Q.     Is there any record to indicate that the

3    urine sample has been discarded?

4      A.     No.  I mean it would just be the result

5    was negative.

6      Q.     Other than the form that we mentioned

7    earlier, is there any record that's related when a

8    urine sample is taken?

9      A.     No.

10      Q.     And to your knowledge are the policies and

11    procedures relating to the collection of urine

12    samples the same in the emergency department at

13    Gottlieb as they are in employee health services?

14             MS. GARDNER:  Object to form.

15             THE WITNESS:  Can you say that again?

16    BY MR. ENDRESS:

17      Q.     Yes.  We just talked about what the

18    employee health services part of Gottlieb does when

19    they take a urine sample, right?  My question is:

20    Would nurses in the emergency department follow the

21    same procedure that we just talked about down in the

22    emergency department when they're collecting a urine

23    sample?

24             MS. GARDNER:  Objection as to form.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 52

1          THE WITNESS:  I don't believe so.  I don't

2      believe they use the same equipment that we use

3      or the same kit.  So they would get their

4      material in a different place.

5  BY MR. ENDRESS:

6      Q.    Okay.

7      A.    They would label it differently.

8      Q.    Got you.  Let's focus just on the

9  emergency department now then.  In the emergency

10 department at Gottlieb is there an -- well, okay.

11 Let's start at the beginning.

12          In the emergency department at

13 Gottlieb does the patient give their urine sample in

14 a private room?

15          MS. GARDNER:  Objection as to form.

16          THE WITNESS:  I -- yeah.  I have not

17      worked in the emergency room, so I don't know if

18      you could give it in your room or if you go in a

19      bathroom.

20 BY MR. ENDRESS:

21      Q.    Okay.  My question is:  Is the patient

22 alone when they give the sample?

23      A.    I don't know.

24          MS. GARDNER:  Objection as to form.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 53

1   BY MR. ENDRESS:

2       Q.    And once the patient deposits their urine

3   sample in the cup, are nurses in the emergency

4   department required to seal the sample in the

5   presence of the patient?

6           MS. GARDNER:  Objection as to form.

7           THE WITNESS:  I don't know their -- I

8       don't know their protocol.

9   BY MR. ENDRESS:

10      Q.    Okay.  Do you know whether nurses in the

11  emergency department are required to label the

12  specimen in the presence of the patient?

13          MS. GARDNER:  Objection as to form.

14          THE WITNESS:  I know that they would label

15      the specimen and they would confirm with the

16      patient that that was indeed her information.

17  BY MR. ENDRESS:

18      Q.    Okay.  And in the emergency department

19  would nurses be required to seal the specimen in the

20  presence of the patient?

21          MS. GARDNER:  Objection as to form.

22          THE WITNESS:  I don't know if they're

23      required.  More than likely they do so it

24      doesn't spill.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 54

1    BY MR. ENDRESS:

2        Q.    Requirements aside, is it their practice

3    to seal urine specimens in the presence of a patient

4    after a urine sample is given?

5              MS. GARDNER:  Objection as to form.

6              THE WITNESS:  Yeah, I can't speak to what

7          their practice is.

8    BY MR. ENDRESS:

9        Q.    Would it be bad practice to ask an

10   individual giving a urine sample to leave their

11   sample on an unattended counter in an unlabeled cup?

12             MS. GARDNER:  Objection as to form.

13             THE WITNESS:  I would say if it was an

14         unlabeled cup, probably.

15   BY MR. ENDRESS:

16       Q.    Would that be against Gottlieb's policies

17   and procedures?

18             MS. GARDNER:  Objection as to form.

19             THE WITNESS:  I would have to refresh.  I

20         can't quote the policy and procedure for that

21         but ...

22   BY MR. ENDRESS:

23       Q.    Would that be contrary to Gottlieb's

24   standard practice to have a patient leave an

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 55

1    unlabeled urine sample on an unattended counter?

2              MS. GARDNER:  Objection to form.

3              THE WITNESS:  I'm not really current on

4         the specimen collecting policies for the

5         emergency room or the hospital.

6    BY MR. ENDRESS:

7         Q.    Okay.  So is it fair to say that as you

8    sit here today you're not prepared to testify as to

9    what Gottlieb's practices are with respect to the

10   collection of urine samples in a drug screen?

11             MS. GARDNER:  Objection.  Form.

12             THE WITNESS:  No.  I'm -- I believe that I

13        did tell you what our practice was in the drug

14        screen.  I'm not familiar what the practices of

15        the emergency room are.  I would say that I

16        wouldn't leave a specimen without a label.  But

17        I'm not speaking to -- I don't know what they

18        did, and I don't know -- I don't know what the

19        scenario is in the emergency room as far as was

20        it in the same room, was it in an outside room.

21   BY MR. ENDRESS:

22        Q.    So you don't know what the practices are

23   in the emergency department; is that right?

24        A.    Yes.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 56

1      Q.    But you said you wouldn't allow a urine

2   sample to be put in an unlabeled cup on an unattended

3   counter; is that right?

4             MS. GARDNER:  Objection as to form.

5             THE WITNESS:  Outside of a patient's -- I

6      would say outside of the patient's room.

7   BY MR. ENDRESS:

8      Q.    Okay.  And why wouldn't you do that?

9             MS. GARDNER:  Objection as to form.

10            THE WITNESS:  So that I wouldn't mix up a

11     specimen.

12   BY MR. ENDRESS:

13     Q.    In other words, that's the type of

14   practice that can lead to the wrong specimen being

15   matched to the wrong patient; is that right?

16            MS. GARDNER:  Objection as to form.

17   BY MR. ENDRESS:

18     Q.    I didn't hear your answer, Ms. Pasquini.

19     A.    It's possible.

20     Q.    Okay.  Does Gottlieb have a policy

21   relating to how to classify a urine drug screen if

22   the urine drug screen shows a positive result, in

23   other words, indicates the presence of a controlled

24   substance, but the employee has a valid prescription

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 57

1    that explains the result of the drug test?

2         A.    Then it would -- I'm sorry.  Do we have a

3    policy for that?

4         Q.    Yeah, my question is do you have a policy?

5         A.    Can I see the policy that you put up

6    there?

7              MR. ENDRESS:  Sure, Exhibit 7.

8              THE WITNESS:  Can you scroll down, please.

9         (Witness examines document.)  Can you scroll to

10        the beginning again, please.  (Witness examines

11        document.)  Okay.  You can take it down.

12             I'm sorry.  Can you just repeat the

13        question?

14   BY MR. ENDRESS:

15        Q.    Yeah.  My question is whether Gottlieb has

16   a policy that relates to how to classify the results

17   of a urine drug screen if the urine drug screen

18   reports the presence of a controlled substance in a

19   patient's urine but that patient has a prescription

20   that explains the positive result?

21        A.    Yes, it would be sent to a medical review

22   officer to evaluate.

23        Q.    Can you tell me what a medical review

24   officer is?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 58

1          A.      A medical review officer is the person

2     that will determine the final results of the urine

3     drug screen and will take into the details if there

4     was an existing prescription that might cause those

5     results to be present in the specimen.

6          Q.      Is the medical review officer a doctor?

7          A.      Yes.  I'm not sure if that's a

8     qualification, but the ones I've worked with have

9     been physicians.

10         Q.      In your experience every medical review

11    officer you've worked with is a doctor; is that

12    right?

13         A.      Yes.

14         Q.      And in your experience are the medical

15    review officers who are asked to weigh in on a urine

16    drug screen professionals who have special experience

17    or training that enables them to interpret the

18    results of a drug screen?

19         A.      Yes.

20                 MS. GARDNER:  Objection to form.

21    BY MR. ENDRESS:

22         Q.      And when the medical review officer makes

23    the determination regarding the -- how to interpret

24    the results of a urine drug screen, do they have the

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 59

1   last word in the organization regarding how that

2   screen -- how those test results are to be treated?

3        A.    Yes, as far as the -- yes, of the

4   specimen, of the drug screen results, yes.

5        Q.    So when it comes to how to interpret the

6   results of a urine drug screen, is it fair to say

7   that the one who gets to make the last call is the

8   medical review officer?

9             MS. GARDNER:  Objection as to form.

10  BY MR. ENDRESS:

11       Q.    Can you repeat your answer, Ms. Pasquini?

12       A.    Yes.

13       Q.    All right.  I'd like to take a look --

14            MR. ENDRESS:  First of all, are we all

15       good with breaks?  Are we good to keep going?

16       Would anyone like a break right now?

17            MS. GARDNER:  I'm fine.

18            THE WITNESS:  Keep going.

19  BY MR. ENDRESS:

20       Q.    Let's take a look at a document I've

21  marked as Exhibit 32.  What I'd like you to do, Ms.

22  Pasquini, is look over this document Exhibit 32 and

23  tell me whether you recognize it.

24       A.    Yes.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 60

1      Q.    Why don't you take a moment and read

2   through it.

3      A.    (Witness examines document.)

4      Q.    Okay.  Ms. Pasquini, now that you've had a

5   chance to look at the email, you're copied on a

6   number of the emails in this exhibit; is that right?

7      A.    Yes.

8      Q.    And does this Exhibit 32 accurately

9   reflect the emails you sent and received at the times

10  listed in the document?

11     A.    Yes.

12     Q.    And this is an exchange with a Doctor

13  Joshua D. Evans; is that correct?

14     A.    Yes.

15     Q.    Have you worked with Doctor Evans prior to

16  the exchange set forth in this email?

17     A.    No, I did not.

18     Q.    Have you ever worked with him since?

19     A.    Yes.

20     Q.    Okay.  Do you know Doctor Evans to be a

21  competent physician?

22     A.    Yes.

23     Q.    Does he have a specialty to your

24  knowledge?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 61

1      A.    Are you -- besides his MRO, I don't know

2   what other specialties he has.

3      Q.    In any case, Doctor Evans is a medical

4   review officer for Gottlieb, right?

5      A.    Yes.

6      Q.    And in this Exhibit 32 you are asking

7   Doctor Evans to serve as a medical review officer in

8   relation to Wendy Lohmeier's urine drug screen; is

9   that right?

10          MS. GARDNER:  Objection as to form.  Gene,

11      I think we're exceeding the scope of No. 7.  She

12      has not been noticed to testify as to percipient

13      witness about the events in October 2018.  So,

14      Teresa, I'm going to instruct you not to answer

15      that question.

16          THE WITNESS:  Okay.

17          MS. GARDNER:  If you want to talk to her

18      about Doctor Evans and his role in the hospital

19      about drug testing, that's fine, but we're

20      limiting today's deposition to the parameters of

21      topic No. 7.

22          MR. ENDRESS:  Okay.  I'm going to object

23      to your instruction to this witness to have her

24      not answer my question.  The topic is Gottlieb's

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 62

1      practices and policies relating to employee drug

2      testing.  This is an application of that policy,

3      as the witness' testimony has already

4      established, and I think it falls well within

5      the topic.  So I would ask you to reconsider

6      your objection.

7            MS. GARDNER:  Yeah, and you're free to

8      object, but, again, she has not been noticed as

9      an -- in her individual capacity about what

10     transpired in October 2018, so, again, Teresa,

11     I'm instructing you not to answer this line of

12     questioning.

13           MR. ENDRESS:  Okay.  We're going to

14     reserve our objection and we'll take it up with

15     the judge.

16           Is your objection -- are you saying she

17     can't comment on the contents of this email

18     exchange?

19           MS. GARDNER:  That's correct.  That would

20     be percipient witness testimony.  She's not

21     testifying as a corporate representative about

22     the practices and policies of employee drug

23     testing.  So if you want to ask her about what

24     the hospital's practices are about what they

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 63

1    will do, what steps are taken and what

2    conversations she would have with an MRO as a

3    matter of policy and practice, that's fine.

4        But to the extent you're questioning her

5    about what was said or done on a particular

6    date, that exceeds the scope of her 30(b)(6)

7    testimony and goes into percipient witness

8    testimony.

9  BY MR. ENDRESS:

10       Q.   Let's look at DEF00205 in this.  Okay.

11  I'm focused on the email from Doctor Evans on October

12  26, 2018, at 12:32 p.m.  In the fourth paragraph in

13  this email Doctor Evans says, quote:  "Any time you

14  have a positive test but a prescription that explains

15  it, it is officially classified as a negative test,"

16  end quote.

17            Do you see that?

18       A.   Yes.

19       Q.   Is that the Gottlieb medical review

20  office's official policy?

21            MS. GARDNER:  Objection as to form.

22            THE WITNESS:  I don't think it's specific

23    to an organization.  I think it's an MRO.  They

24    have certain guidelines.  I'm not familiar with

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 64

1        them, but it would not be specific to an

2        organization.

3    BY MR. ENDRESS:

4        Q.    Okay.  Is that the policy of the MRO?

5            MS. GARDNER:  Objection as to form.

6            THE WITNESS:  I don't know the specifics

7        of the parameters that they used.

8    BY MR. ENDRESS:

9        Q.    Okay.  But you testified earlier that what

10    the MRO says is definitive as far as Gottlieb is

11    concerned; is that correct?

12            MS. GARDNER:  Objection as to form.

13    BY MR. ENDRESS:

14        Q.    Can you repeat your answer, Ms. Pasquini?

15        A.    Yes, that's what I said.

16        Q.    And do you have any reason to believe that

17    what Doctor Evans is saying in this email is

18    inaccurate?

19            MS. GARDNER:  Objection as to form.

20        Teresa, don't answer that question.

21    BY MR. ENDRESS:

22        Q.    I'm asking you in your capacity as a

23    corporate witness, to be very clear.

24            MS. GARDNER:  Same objection.  It's

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 65

1      exceeding the scope of topic No. 7.  I'm

2      instructing the witness not to answer that

3      question.

4           MR. ENDRESS:  Audrey, this is specifically

5      about the policy at Gottlieb.  I don't -- I'm

6      not asking her about her personal knowledge.

7      I'm asking her who -- she's testifying about the

8      policies at Gottlieb.  I'm asking her what the

9      policy at Gottlieb is.

10          MS. GARDNER:  You're asking her for an

11     opinion as to his conclusion on a particular

12     date.  It's not topic No. 7.  You have not

13     noticed her for the events of October 2018, and

14     she has not been noticed as a percipient

15     witness.

16          MR. ENDRESS:  I'm asking her specifically

17     about a representation that Doctor Evans is

18     making about the policy.

19          MS. GARDNER:  I don't think -- I disagree

20     with you.  I think it's outside the scope of

21     topic No. 7, and I'm sticking with my

22     instruction.

23          MR. ENDRESS:  Okay.  We'll take it up with

24     the judge then.

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 66

1          Can I have a moment to review my notes?

2          MS. GARDNER:  Sure.

3          MR. ENDRESS:  Let's come back in five

4     minutes.

5                    (Whereupon a recess was taken from

6                    11:52 a.m. to 11:58 a.m., after

7                    which the preceding deposition

8                    continued as follows:)

9          MR. ENDRESS:  Okay.  I'm going to -- I

10    have no more questions at this time, but I'm

11    going to reserve our right to recall this

12    witness at a later time on two bases.  First,

13    the witness was not prepared to answer certain

14    questions regarding Gottlieb's policies and

15    procedures in relation to employee drug testing

16    and on that basis we would ask to recall the

17    witness once she's adequately prepared.

18         Second, in our view it was inappropriate

19    to instruct the witness not to answer direct

20    questions about Gottlieb's policies stemming

21    from Exhibit 32, and for those two reasons we're

22    going to reserve our right to recall this

23    witness.

24         MS. GARDNER:  Sure.  And the defendants

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 67

1          would just respond that Ms. Pasquini has

2          testified about the hospital's policies with

3          respect to employee drug testing.  The 30(b)(6)

4          notice does not specify the plaintiff's intent

5          to depose her as to drug testing requirements in

6          the emergency room; and the defendants' position

7          is that the questioning exceeded the scope of

8          topic No. 7, and the questioning instead

9          pertained to the events of October 2018

10         including Ms. Pasquini's opinion, thoughts,

11         feelings about what was said and/or done on that

12         date.  And so that is the basis of the

13         defendant's disagreement with plaintiff's

14         reservation; but we understand that that

15         reservation has, in fact, been made, and we will

16         note that moving forward.

17              I have a few follow-up questions for Ms.

18         Pasquini.

19                   CROSS EXAMINATION

20    BY MS. GARDNER:

21         Q.    Ms. Pasquini, I want to clarify a few

22    points in your testimony from earlier.  My first

23    question for you is:  Are you aware of any other

24    policy governing employee drug testing that was in

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 68

1    place in October 2018 other than Exhibit 7 that was

2    reviewed by you?

3        A.    No.

4              MR. ENDRESS:   Object to the form of the

5        question.

6    BY MS. GARDNER:

7        Q.    If any other policies did exist at that

8    time, are those policies that you would have been

9    aware of?

10       A.    I believe so.

11       Q.    Are you aware of any written policies

12   regarding chain of custody requirements that existed

13   at the time in October 2018?

14       A.    I'm not.

15       Q.    If any such policies did exist, is that

16   something that you would have received or been

17   notified of at that time?

18       A.    Yes.

19       Q.    Ms. Pasquini, is it your understanding --

20   or strike that.

21             Ms. Pasquini, under Gottlieb's

22   policies and practices is it permissible for either a

23   quantitative or a nonquantitative drug test to be

24   conducted for purposes of a fitness-for-duty exam?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 69

1          MR. ENDRESS:  Objection to the form of the

2     question.

3  BY MS. GARDNER:

4          Q.   You can answer.

5          A.   Oh, yes.

6          Q.   Are you aware of any policy or practice

7  requiring anyone in the emergency department to

8  perform a quantitative versus nonquantitative drug

9  test for purposes of a fitness-for-duty exam?

10          MR. ENDRESS:  Objection to the form of the

11     question.  The witness testified she doesn't

12     know.

13  BY MS. GARDNER:

14          Q.   You can answer.

15          A.   Yeah, I don't know their practice in the

16  emergency room.

17          Q.   Okay.  Ms. Pasquini, you testified that

18  after a drug test result comes in, the MRO officer

19  reviews it; is that correct?

20          A.   Yes.

21          Q.   And if an MRO officer concludes that a

22  drug test should be classified as negative, does that

23  mean that the particular substance did not, in fact,

24  exist in the person's specimen?

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 70

```
 1      A.    No.

 2      Q.    What does that mean?

 3            MR. ENDRESS:  Objection to the form of the

 4      question.

 5            THE WITNESS:  It means that he evaluated

 6      the situation; and if prescribed medication was

 7      being used, it would come up as the form of a

 8      substance.  Then that would be taken in

 9      consideration, and he would determine whether

10      this was current and accurate and not -- and

11      being used as prescribed.

12  BY MS. GARDNER:

13      Q.    Okay.  So is it correct that in making his

14  conclusion the MRO will consider the particular

15  employee's prescriptions at the time?

16      A.    Yes.

17      Q.    So would it be fair to say that the MRO

18  isn't necessarily concluding whether or not a

19  substance, in fact, existed in the specimen?  It's

20  more so a determination as to whether or not that

21  drug test result was like a lawful use of drug or a

22  nonlawful use of drug; would that be fair to say?

23      A.    Yes.

24      Q.    What does the -- after the MRO makes his
```

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 71

1   conclusion about the drug test results, what does he

2   then do with his conclusion?  Who does he share it

3   with?

4              MR. ENDRESS:  Objection to the form of the

5        question.

6              THE WITNESS:  He would more than likely

7        share it with employee health.

8   BY MS. GARDNER:

9        Q.    And is the MRO officer included -- or

10  strike that.

11             Is the MRO officer responsible for

12  making determinations about employee discipline?

13       A.    No.

14       Q.    Is employee health responsible for making

15  the determinations about employee discipline?

16       A.    No.

17             MS. GAGLIARDI:  Can we pull up Exhibit No.

18       7 again.  If you can go to page 3 of 4.

19  BY MS. GARDNER:

20       Q.    Ms. Pasquini, I'd like to turn you to the

21  second sentence:  "In consultation with human

22  resources, any employee suspected of violating this

23  policy may be required to report to employee health

24  services (or the emergency department on off-shifts),

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 72

1   on hospital time and at the hospital's expense for a

2   fitness-for-duty examination which will include, but

3   is not limited to, appropriate testing."

4              Ms. Pasquini, is a nonquantitative

5   drug test considered appropriate testing by the

6   hospital?

7       A.    A substance is there, so yes.

8       Q.    Are you aware of any other written

9   protocols other than this policy that would have

10  applied to an employee in the Gottlieb ICU in October

11  2018?

12             MR. ENDRESS:  Objection to the form of the

13       question.

14             THE WITNESS:  No.

15             MS. GARDNER:  That's all that I have.

16       Gene, do you have anything else?

17             MR. ENDRESS:  No.  I have nothing further

18       at this time.

19             MS. GARDNER:  Okay.

20             THE REPORTER:  Signature?

21             MS. GARDNER:  Yes.

22             MR. ENDRESS:  Thank you, Ms. Pasquini.  We

23       appreciate your time.

24    (Whereupon the deposition concluded at 12:08 p.m.)

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 73

1          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   WENDY LOHMEIER,

4           Plaintiff,

5      vs.                       No. 2019-cv-8136

6   GOTTLIEB MEMORIAL HOSPITAL and
    LOYOLA UNIVERSITY MEDICAL CENTER,
7
            Defendants.
8
    _____
9

10          I, TERESA PASQUINI, being first

11   administered an oath, say that I am the deponent in

12   the aforesaid deposition taken on October 1, 2021;

13   that I have read the foregoing transcript of my

14   deposition, and affix my signature to same.

15

16

17                       _____
                         Teresa Pasquini
18

19

20
    Subscribed and sworn to
21   before me this _____ day
    of _____, 2021.
22

23
    _____
24   Notary Public

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 74

1    STATE OF ILLINOIS  )
                        ) SS.
2    COUNTY OF C O O K  )

3

4
                 I, JOANNE M. GAGLIARDI, CSR, RPR, do
5
     hereby certify that TERESA PASQUINI, was by me
6
     remotely first duly sworn to testify to the truth,
7
     the whole truth, and nothing but the truth, and that
8
     the above deposition was recorded remotely
9
     stenographically by me and reduced to computer-aided
10
     transcription by me.
11
                 I FURTHER CERTIFY that the foregoing
12
     transcript of the said deposition is a true, correct,
13
     and complete transcript of the testimony given by the
14
     said witness at the time and place specified
15
     hereinbefore.
16
                 I FURTHER CERTIFY that I am not a
17
     relative or employee or attorney or counsel of any of
18
     the parties, nor a relative or employee of such
19
     attorney or counsel, or financially interested
20
     directly or indirectly in this action.
21

22

23

24

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 75

1          I FURTHER CERTIFY that my certificate

2   annexed hereto applies to the original and typed

3   transcripts only, signed and certified transcripts

4   only.  I assume no responsibility for the accuracy of

5   any reproduced copies not made under my control or

6   direction.

7          IN WITNESS WHEREOF, I have hereunto

8   set my hand this 8th day of October, 2021.

9

10  _____
    Certified Shorthand Reporter

11  Registered Professional Reporter
    C.S.R. No. 084-002466

12

13

14

15

16

17

18

19

20

21

22

23

24

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 1

**A**

a-r-t-u-c-h 5:23
a.m 1:19 19:22
  19:22 32:22,22
  66:6,6
ability 7:16 41:3
  41:6,11,23
able 7:6 24:2,15
absolutely 32:19
abstract 27:20
access 35:7,11
accommodate
  8:16
accuracy 75:4
accurate 70:10
accurately 7:5
  60:8
action 74:20
actual 37:10
  46:8 49:2
address 5:24
addressing 45:2
adequately
  66:17
administer
  11:12 20:8
  31:21 32:6
  35:4 36:24
  37:11 38:14
  41:3,23
administered
  19:1 21:9,21
  24:10,12 37:24
  44:2,10 73:11
administering
  4:13 12:5
administrators
  20:18
advance 5:17
affix 73:14
affixed 47:2
aforesaid 73:12
ago 6:10
agree 4:11 17:19
agreement 4:16

alcohol 13:9
  18:15,16,18
  21:15,17,19,19
  21:24 22:6,10
allow 56:1
amount 23:15
  24:13 28:3,15
amphetamine
  32:4
analyze 40:2
analyzed 34:7
and/or 67:11
annexed 75:2
answer 7:5,24
  14:8 20:15
  23:19 24:2
  30:2,5,6,12,13
  30:21 32:8
  43:5 56:18
  59:11 61:14,24
  62:11 64:14,20
  65:2 66:13,19
  69:4,14
answering 13:21
answers 7:23
anybody 49:8
Apologies 5:17
  24:18 38:8
apologize 38:5
APPEARANC...
  2:1
Appeared 2:7,13
application 62:2
applied 72:10
applies 75:2
appreciate 24:19
  72:23
approach 44:2
appropriate
  16:8 17:4,6,8
  17:10,16 18:5
  18:9,13,20
  72:3,5
aside 12:2,4 54:2
asked 20:4 29:9

41:1 58:15
asking 6:22 7:4
  61:6 64:22
  65:6,7,8,10,16
assume 8:12
  28:24 29:19
  75:4
assumption 28:4
  28:24
attached 10:3
  48:12
attention 14:15
  33:3
attorney 5:9 9:3
  74:17,19
audible 7:10
Audrey 2:10
  4:20 65:4
audrey.gardn...
  2:12
available 35:7
  36:14 41:7
Avenue 2:10
aware 43:11,13
  43:21 44:8
  67:23 68:9,11
  69:6 72:8

**B**

B 5:23
back 8:22 14:3
  16:18 20:1
  29:18 33:1
  35:14 40:6,12
  42:17 43:8
  66:3
bad 39:10 54:9
bag 49:20,20
Bartuch 5:20,21
base 29:5
based 16:11,12
  30:20 31:16
bases 66:12
basically 6:14
basis 44:10

66:16 67:12
Bates 14:16,23
  15:4
bathroom 52:19
beginning 52:11
  57:10
begins 14:16,24
behalf 2:7,13
  4:21 5:2 10:7
behavior 23:16
believe 6:11 15:9
  24:11,11,12
  32:2,10,10
  33:14 42:8,9
  44:24 52:1,2
  55:12 64:16
  68:10
belongs 48:4
best 5:16 7:16
  8:8,16 45:5
better 17:5,23
binding 4:13
biohazard 50:22
bit 17:12 34:10
  36:24
blood 21:19,22
  21:23 22:2,4
blood-based
  22:6,10
box 50:7,8
boy 5:23
Braddock 6:1
break 8:15
  19:19 20:4
  32:1,17 36:23
  59:16
breaks 8:17
  32:13 59:15
Brief 8:21
briefly 5:8
bring 9:13 50:8
building 50:9

**C**

C 74:2

C.S.R 75:11
call 27:9,10 59:7
called 1:12 5:2
  6:22 11:23
  12:1 34:13
calling 27:18
camp 11:18
campaign 11:19
  12:7
capacity 62:9
  64:22
capital 15:1
care 11:13
carefully 13:20
case 6:20,22
  14:24 20:14
  61:3
catch 7:17,17
categories 32:3
categorize 32:11
category 18:13
  18:20
cause 44:12 58:4
CENTER 1:7
  73:6
certain 63:24
  66:13
certificate 75:1
certified 1:17
  4:12 75:3,10
certify 74:5,11
  74:16 75:1
chain 3:14 10:15
  44:14,18,22
  45:2,6,13,20
  45:24 46:4
  47:17 68:12
chance 60:5
check 47:9
Chicago 2:5,11
circumstances
  6:12
Civil 1:14
clarification
  30:4

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 2

**clarify** 8:9 67:21
**classified** 27:16
  63:15 69:22
**classify** 56:21
  57:16
**clean** 7:19 8:3
**clear** 8:19 30:11
  32:5 37:10
  64:23
**collect** 46:3
**collected** 33:19
  34:1,4,8 46:12
  47:21
**collecting** 49:15
  51:22 55:4
**collection** 35:12
  51:11 55:10
**column** 26:6,9
  28:2
**come** 66:3 70:7
**comes** 37:22
  38:9 43:8,23
  47:14 48:7
  49:3,21 59:5
  69:18
**commencement**
  4:1
**comment** 62:17
**comp** 11:13,13
  12:6
**competent** 60:21
**complete** 74:13
**completed** 8:1
**completely** 7:6
**computer-aided**
  74:9
**concentration**
  31:6
**concerned** 64:11
**concerns** 13:12
  40:16
**concluded** 72:24
**concludes** 69:21
**concluding**
  70:18

**conclusion**
  65:11 70:14
  71:1,2
**conduct** 18:14
**conducted** 68:24
**conducts** 19:15
  20:5
**confirm** 53:15
**confirmation**
  37:17 38:24
  44:20
**confirming**
  25:21
**confusing** 17:8
**connect** 9:8
**connection** 6:17
  6:18
**consider** 17:10
  70:14
**consideration**
  70:9
**considered** 18:9
  72:5
**consultation**
  15:22 35:19
  71:21
**container** 50:22
**contents** 9:2
  62:17
**continued** 19:24
  32:24 66:8
**contrary** 54:23
**control** 75:5
**controlled** 25:16
  26:5 39:12,16
  40:8 44:4
  56:23 57:18
**conversations**
  9:2 63:2
**copied** 60:5
**copies** 75:5
**corner** 14:24
  33:4
**corporate** 62:21
  64:23

**correct** 26:7
  32:9 34:16
  39:3,6,13,14
  39:20 46:24
  48:2,5,8 50:3,3
  60:13 62:19
  64:11 69:19
  70:13 74:12
**correctly** 5:16
**counsel** 4:10,15
  4:18 74:17,19
**count** 27:21,22
**counted** 28:8
**counter** 54:11
  55:1 56:3
**COUNTY** 74:2
**couple** 7:3
**courier** 49:23
**court** 1:1 4:6,9
  7:10 73:1
**Courts** 1:15
**CROSS** 3:7
  67:19
**CSR** 1:23 74:4
**cup** 46:11,13,14
  46:15,16,21
  47:3,6,7,22
  48:10 53:3
  54:11,14 56:2
**current** 12:22
  55:3 70:10
**currently** 10:24
**custody** 10:15
  44:15,18,22
  45:2,6,14,20
  45:24 46:4
  47:17 68:12
**Cut** 26:7
**cutoff** 25:21
  26:9,20 27:6
  28:2,15 29:13

────────────
       **D**
────────────
**D** 3:1 60:13
**date** 9:22 63:6

  65:12 67:12
**day** 73:21 75:8
**decision** 35:3
**DEF** 15:1
**DEF000037**
  25:22
**DEF00029** 14:16
**DEF00205** 63:10
**defendant's**
  67:13
**defendants** 1:8
  2:13 4:21
  66:24 73:7
**defendants'** 67:6
**definitive** 64:10
**department**
  11:20,24 15:11
  15:18 16:1
  35:22 36:7
  40:21 41:1,3
  41:10,23 42:5
  42:20,23 43:6
  43:9,15 51:12
  51:20,22 52:9
  52:10,12 53:4
  53:11,18 55:23
  69:7 71:24
**depend** 17:1
  23:24 29:1
**deponent** 73:11
**depose** 67:5
**deposed** 6:6,13
  7:2
**deposition** 1:11
  3:16 4:2 6:20
  9:5,11,21,24
  19:23 32:23
  61:20 66:7
  72:24 73:12,14
  74:8,12
**depositions** 1:16
  4:10
**deposits** 53:2
**describe** 11:8
  45:23 46:9

**described** 10:2
**DESCRIPTION**
  3:12
**designated** 10:1
**details** 6:21 9:7
  58:3
**detect** 28:13,16
  28:19
**detected** 22:21
  27:9,24 29:7
**determination**
  58:23 70:20
**determinations**
  71:12,15
**determine** 58:2
  70:9
**difference** 22:16
**different** 18:24
  19:5 20:7,20
  20:24 31:17,22
  52:4
**differently** 44:3
  52:7
**direct** 3:5 5:5
  14:15 33:3
  66:19
**directing** 26:2
**direction** 75:6
**directly** 74:20
**disagree** 65:19
**disagreement**
  67:13
**discard** 50:21,24
**discarded** 50:16
  51:3
**discipline** 71:12
  71:15
**displaying** 9:16
**distinction**
  34:11 44:9
**distinguish**
  31:16,21
**District** 1:1,1,15
  73:1,1
**DIVISION** 1:2

73:2
**doctor** 58:6,11
60:12,15,20
61:3,7,18
63:11,13 64:17
65:17
**document** 9:18
10:11 13:16,20
13:22 14:2,19
16:12 24:24
25:7,10 33:17
33:23 35:15
57:9,11 59:20
59:22 60:3,10
**documents** 13:1
**doing** 9:7 42:12
**dosage** 24:15
**drain** 50:19
**drill** 31:24
**Drive** 6:1
**drug** 3:15 10:14
12:14,17 13:9
13:12 16:15,23
18:4,8,19,23
19:1,12,14
20:6,7,18,20
21:3,4,7,8,9,13
22:9,11,15,17
22:18,19 23:11
23:2,2,3,5,6,12
23:12,13,15
24:5,9 25:11
25:13,13,14
34:12,13,14
36:13,16,18,19
37:5,15,24
38:10,13,16
39:6,9,9 40:13
40:16,20 41:2
41:4,11,24
42:4,6,11 43:1
43:7 44:1,5,9
44:13,23 55:10
55:13 56:21,22
57:1,17,17

58:3,16,18,24
59:4,6 61:8,19
62:1,22 66:15
67:3,5,24
68:23 69:8,18
69:22 70:21,21
70:22 71:1
72:5
**drugs** 19:6 22:20
22:20 25:16
**duly** 5:3 74:6
**duty** 38:11 41:12

---

**E**

**E** 3:1
**earlier** 7:1 34:11
34:19 51:7
64:9 67:22
**EASTERN** 1:2
2:6
**eendress@hah...**
2:6
**effect** 23:16
**eight** 42:18
**either** 19:8
34:20 68:22
**electronic** 4:10
**email** 3:14 60:5
60:16 62:17
63:11,13 64:17
**emails** 60:6,9
**emergency**
15:24 35:10,22
36:6,9 37:22
38:3 39:17
40:21 41:1,2,6
41:10,22 42:5
42:20,23 43:6
43:9,14 50:4
51:12,20,22
52:9,9,12,17
53:3,11,18
55:5,15,19,23
67:6 69:7,16
71:24

**employ** 20:21
34:20
**employed** 10:24
11:5
**employee** 10:14
11:4,6,9,20,23
12:1,8,12,13
12:17 13:12
15:21,22,24
16:13,22 17:14
35:7,20,21
36:5,10,12
37:1,11,22
38:1,4,9,10,12
38:14 39:3,21
40:17,20,22,24
41:4,12 42:7
43:7,22,23,24
44:3,11 45:18
46:10 51:13,18
56:24 62:1,22
66:15 67:3,24
71:7,12,14,15
71:22,23 72:10
74:17,18
**employee's**
39:13,17,18
40:8 70:15
**employees** 11:19
**employer** 6:17
**employs** 19:14
21:13 22:12
**enables** 58:17
**Endress** 2:3 3:4
4:17,17 5:6,9
8:22,24 9:13
9:15 13:3,5,17
13:18 14:10
19:20 20:1,3
23:18 24:21
25:8 29:2
30:10 31:13
32:19 33:1,2
37:8,20 45:11
51:16 52:5,20

53:1,9,17 54:1
54:8,15,22
55:6,21 56:7
56:12,17 57:7
57:14 58:21
59:10,14,19
61:22 62:13
63:9 64:3,8,13
64:21 65:4,16
65:23 66:3,9
68:4 69:1,10
70:3 71:4
72:12,17,22
**ensure** 45:20,24
**ensuring** 45:13
**entail** 21:18
**Enter** 12:3
**entitled** 13:7
**equipment** 52:2
**established** 62:4
**EUGENE** 2:3
**evaluate** 57:22
**evaluated** 70:5
**Evans** 60:13,15
60:20 61:3,7
61:18 63:11,13
64:17 65:17
**events** 61:13
65:13 67:9
**exact** 36:17
**exam** 35:5 43:17
43:24 68:24
69:9
**examination**
1:13 3:5,7 5:5
10:2 16:3,7,14
16:23 17:3,15
17:16,20 18:2
18:6,10,14,21
19:2,13,15
20:5,19 21:10
21:14 34:21
35:24 36:4
37:12,23 67:19
72:2

**examinations**
22:13
**examine** 13:20
**examined** 5:3
**examines** 14:2
25:7 57:9,10
60:3
**exceeded** 67:7
**exceeding** 61:11
65:1
**exceeds** 63:6
**exchange** 60:12
60:16 62:18
**exhibit** 3:13,14
3:15,16 9:14
9:18 10:3 13:3
13:7 14:5
24:17,20,23
33:4 34:7,8
35:14,18 57:7
59:21,22 60:6
60:8 61:6
66:21 68:1
71:17
**Exhibits** 3:11
4:2
**exist** 68:7,15
69:24
**existed** 68:12
70:19
**existing** 43:21
58:4
**expect** 8:18
**expense** 16:2
35:23 72:1
**experience** 7:1
58:10,14,16
**explain** 35:8
**explains** 43:14
57:1,20 63:14
**extent** 63:4

---

**F**

**facility** 50:5
**fact** 67:15 69:23

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 4

70:19
**factors** 24:1
**factually** 28:9
**fair** 8:13 22:24
25:17 26:23
55:7 59:6
70:17,22
**fall** 11:16 12:8
18:13,20
**falls** 12:10 62:4
**familiar** 18:22
21:11 22:14
29:16 32:11
41:14,18 44:14
45:4,5,9,16
55:14 63:24
**far** 55:19 59:3
64:10
**feelings** 67:11
**fell** 32:3
**figure** 27:20
**fill** 46:3,6 49:6
50:23
**filled** 48:21 49:5
49:17
**final** 33:19,24
58:2
**financially**
74:19
**find** 24:18
**fine** 59:17 61:19
63:3
**first** 5:3 9:22
14:3 17:7
29:12 42:14
59:14 66:12
67:22 73:10
74:6
**fitness** 38:11
41:12
**fitness-for-duty**
16:2,7,14,23
17:3,14,15,20
18:1,6,10,14
18:21 19:2,13

19:15 20:5,19
21:10,14 22:12
34:21 35:5,24
36:4 37:12,23
43:16,24 68:24
69:9 72:2
**five** 66:3
**five-minute**
19:19
**flu** 11:12,18,19
12:6,7
**focus** 12:11
22:15 40:19
43:22 52:8
**focused** 63:11
**focusing** 10:11
18:23 24:3
29:12 33:17
**follow** 35:9 37:9
51:20
**follow-up** 43:10
67:17
**follows** 5:4
19:24 32:24
66:8
**force** 14:5,12
**foregoing** 73:13
74:11
**form** 13:14 14:7
23:17 28:22
30:1 31:11
37:3,14 45:8
46:4 48:20,23
48:24 49:3,4,7
49:12,17,22
50:23 51:6,14
51:24 52:15,24
53:6,13,21
54:5,12,18
55:2,11 56:4,9
56:16 58:20
59:9 61:10
63:21 64:5,12
64:19 68:4
69:1,10 70:3,7

71:4 72:12
**forth** 44:22
60:16
**forward** 15:3
67:16
**fourth** 63:12
**free** 62:7
**Friday** 1:18
**full** 5:14
**further** 37:17
38:24 72:17
74:11,16 75:1
**future** 13:19

**G**
**Gagliardi** 1:17
1:23 4:6 71:17
74:4
**garbage** 50:20
**Gardner** 2:10
3:6 4:20,20
8:20 13:14
14:7 19:18
23:17 28:22
30:1,3 31:11
32:16 37:3,14
45:8 51:14,24
52:15,24 53:6
53:13,21 54:5
54:12,18 55:2
55:11 56:4,9
56:16 58:20
59:9,17 61:10
61:17 62:7,19
63:21 64:5,12
64:19,24 65:10
65:19 66:2,24
67:20 68:6
69:3,13 70:12
71:8,19 72:15
72:19,21
**Gene** 4:17 5:9
13:15 19:18
32:16 61:10
72:16

**general** 45:1
**generally** 8:2
**gestures** 7:13
**give** 7:10 22:21
40:3 41:11
47:12 52:13,18
52:22
**given** 22:23 40:7
46:21 54:4
74:13
**gives** 25:20
**giving** 54:10
**go** 7:3 15:17
16:18 20:1
33:1,16 35:14
49:23 52:18
71:18
**goes** 46:9 47:19
47:19 49:20
63:7
**going** 7:4,11
8:12 9:23 10:7
15:3 24:18
25:1 28:9 29:5
29:6,8,10,18
30:14 35:16
46:2 49:22
59:15,18 61:14
61:22 62:13
66:9,11,22
**good** 4:5 5:7
10:10 59:15,15
**Gottlieb** 1:6
5:11 9:24 10:7
10:24 11:6,21
12:16 13:8,11
14:5,12 16:13
16:22 19:11,11
19:14 20:5,7
20:17 21:10,13
21:18 22:5,11
31:20 32:6
34:20,24 41:10
44:8,21 45:1
45:13 49:13

51:13,18 52:10
52:13 56:20
57:15 61:4
63:19 64:10
65:5,8,9 72:10
73:6
**Gottlieb's** 10:13
19:11 54:16,23
55:9 61:24
66:14,20 68:21
**governing** 67:24
**ground** 7:3
**guess** 14:11 28:1
**guidelines** 63:24

**H**
**Hahn** 2:2 4:17
**half** 8:17
**halfway** 26:3
**hand** 33:18 75:8
**handled** 44:7
**happen** 40:20
**happens** 17:15
48:6
**happy** 13:21
**hard** 7:12
**head** 7:13 12:24
**health** 11:4,6,9
11:20,23 12:1
12:8,12 15:24
35:7,21 36:5
36:10,12 37:1
37:11,22 38:1
38:4,10,12
39:18,21 40:17
40:22 42:7
43:23,24 45:18
46:10 50:4
51:13,18 71:7
71:14,23
**hear** 56:18
**help** 13:2
**hereinbefore**
74:15
**hereto** 75:2

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 5

**hereunto** 75:7
**hired** 11:12
**Honestly** 29:16
**hospital** 1:6 5:12
    9:24 10:8 11:1
    12:16 13:9
    14:6,12 16:1
    16:13 35:22
    55:5 61:18
    72:1,6 73:6
**hospital's** 16:2
    35:23 62:24
    67:2 72:1
**hour** 1:19 8:17
    8:17
**hours** 40:14
**human** 3:13
    13:8 14:4
    15:22 35:19
    71:21
**hypothetical**
    38:2

**I**

**ICU** 72:10
**idea** 43:3
**identification**
    4:4
**identifying**
    46:22 47:2
    48:1
**identity** 46:20
    49:1
**III** 15:8 16:17
**Illinois** 1:1 2:5
    2:11 4:8 6:1
    73:1 74:1
**imagine** 19:4
**immediately**
    15:11 48:6
**immunization**
    11:11 12:5
**inaccurate** 64:18
**inappropriate**
    66:18

**include** 15:13
    16:7 17:4,16
    17:20 72:2
**included** 17:24
    18:5 71:9
**includes** 20:6
**including** 10:14
    67:10
**INDEX** 3:11
**indicate** 51:2
**indicated** 39:16
**indicates** 56:23
**indirectly** 74:20
**individual** 23:24
    54:10 62:9
**infection** 32:18
**information**
    46:23 47:2
    48:1,11,23,24
    53:16
**initial** 50:10
**initiatives** 12:7,9
**injuries** 11:14
**instance** 38:11
    45:12 50:12
**instant** 50:1
**instruct** 30:4
    61:14 66:19
**instructing**
    62:11 65:2
**instruction**
    61:23 65:22
**intent** 67:4
**interaction** 6:15
**interested** 35:16
    74:19
**interpret** 27:4
    33:22 34:6
    36:3 58:17,23
    59:5
**interviewing**
    15:20
**intravenous**
    21:23
**introduce** 5:9

**issues** 32:18

**J**

**Jackson** 2:9 4:21
**January** 10:17
**Joanne** 1:16,23
    4:6 74:4
**job** 1:24 11:8,16
**Joshua** 60:13
**judge** 62:15
    65:24

**K**

**K** 74:2
**Katsaros** 2:3
    12:3
**keep** 59:15,18
**kept** 50:5
**kind** 17:20 19:14
    26:2 32:7
**kinds** 18:12,24
    19:12 20:7,20
    20:24 21:13
    22:8,11 31:17
    31:22
**kit** 22:3 52:3
**know** 6:21 8:16
    14:8 19:16
    20:11,15 23:21
    23:23 26:14
    27:12 28:23
    29:1,3,5 30:9
    30:12,13,19,21
    30:21 32:9,12
    36:17 41:5,5,6
    41:7,9,15,15
    41:17,20,20,21
    41:22 42:8,19
    43:12,19 44:5
    45:21 46:2,3
    46:17 48:3
    52:17,23 53:7
    53:8,10,14,22
    55:17,18,18,22
    60:20 61:1
    64:6 69:12,15

**knowledge**
    12:21,23 13:12
    22:7 43:11
    51:10 60:24
    65:6
**Kruse** 4:7

**L**

**lab** 3:15 10:16
    25:11 28:10,12
    37:6,17 38:23
    43:4 50:1,7,8
**label** 46:15,19
    47:20 48:11,14
    49:3,21,22
    52:7 53:11,14
    55:16
**labeled** 14:19
**labs** 35:11 40:1
    40:2,7,12
**language** 33:22
    34:6
**lawful** 70:21
**lead** 56:14
**leave** 54:10,24
    55:16
**leaving** 9:4
**left** 33:18
**left-hand** 33:4
**let's** 15:17 20:1
    22:15 24:20
    28:2 29:18
    33:1 36:23
    38:9 40:19
    43:22 46:8
    47:15 50:10
    52:8,11 59:20
    63:10 66:3
**level** 21:20 28:13
    29:7
**Lewis** 2:9 4:21
**LICENSE** 1:23
**lid** 47:9,16
**limited** 10:15
    15:13 16:8

**35:14 72:3
**limiting** 61:20
**line** 62:11
**listed** 60:10
**listen** 44:3
**lists** 15:14
**litigation** 5:11
**little** 17:12 34:10
    36:23
**LLP** 2:2
**locked** 50:8
**Loeser** 2:2 4:18
**Lohmeier** 1:3
    5:10,11 73:3
**Lohmeier's** 61:8
**long** 11:5 32:12
    40:11 42:15,24
    43:3
**look** 12:22 13:1
    13:15,22 15:7
    24:17,20,24
    26:16,17 29:16
    30:22 32:2
    59:13,20,22
    60:5 63:10
**looking** 17:2
    24:15 25:9,15
**looks** 25:14
**lost** 8:20
**lot** 24:1
**lower** 14:24
**Loyola** 1:7 5:12
    73:6

**M**

**M** 1:16,23 74:4
**Madison** 2:4
**maiden** 5:20
**maintains** 44:18
**making** 65:18
    70:13 71:12,14
**manage** 11:13
    11:18 12:15
**manager** 15:11
    15:19

manages 12:8
managing 12:6,6
12:13
mark 26:3
marked 4:3 9:17
13:7 24:23
59:21
matched 56:15
matches 49:2
material 52:4
matter 6:16 63:3
matters 10:2
12:4
mean 17:6 19:3
19:9 26:13
27:7,10,11
29:13 30:19
31:2 32:2 33:8
33:12,23 34:3
34:7 35:8 36:3
38:4 41:16,16
42:2 44:17
50:17 51:4
69:23 70:2
meaning 10:13
means 27:1,8
29:19 70:5
measurement
22:22 29:15
measuring 29:17
medical 1:7 45:3
45:7 57:21,23
58:1,6,10,14
58:22 59:8
61:3,7 63:19
73:6
medication 70:6
meeting 9:9
Melrose 6:1
Memorial 1:6
5:11 9:24 10:7
11:1 12:16
13:9 14:6,12
16:13 73:6
mentioned 12:4

21:15 22:9,10
36:4 38:12,17
48:20 51:6
mess 5:17
met 5:7
method 22:1
Michigan 2:10
military 34:2
milliliter 29:19
29:22
milliliters 28:3,7
28:21 29:14
minute 24:18
minutes 42:18
66:4
misspeaking
38:6
misunderstood
29:11
mix 56:10
ML 29:13
moment 8:20
60:1 66:1
morning 4:5 5:7
move 6:3 14:1
movement 12:10
moving 67:16
MRO 61:1 63:2
63:23 64:4,10
69:18,21 70:14
70:17,24 71:9
71:11
multiple 19:12

**N**
N 3:1
name 4:5,15
5:14,20 9:21
36:17 46:22
47:2
names 5:18
nanograms
29:14,19,21
nature 6:19
necessarily

70:18
need 8:15,18
13:20 30:5
49:7,10,12
needs 44:1,10
48:21 49:14
negative 27:16
27:22,24 28:11
46:18 50:11,15
51:5 63:15
69:22
nevertheless
29:23
newly 11:12
NG 29:13
NG/ML 26:10
26:12 27:12
nice 7:19 8:3
nods 7:13
nonattorneys
9:10
nonlawful 70:22
nonquantitative
36:19 37:1,13
38:20 41:24
42:4,15,24
43:7,8,16
50:10 68:23
69:8 72:4
nonrapid 42:24
43:1
North 2:10
NORTHERN
1:1 73:1
Notary 73:24
note 67:16
notes 66:1
notice 1:13 3:16
9:20 67:4
noticed 61:12
62:8 65:13,14
notified 68:17
number 3:12
14:23,23 15:4
15:14 24:19

26:5 49:1 60:6
numbers 14:18
numeral 14:16
15:8 16:17
nurse 11:4,6,9
45:19 47:23
nurses 45:12
51:20 53:3,10
53:19
nursing 15:12
15:19

**O**
O 74:2,2
o'clock 1:19
oath 4:13 73:11
object 51:14
61:22 62:8
68:4
objection 4:11
4:19,22 13:14
14:7 23:17
28:22 30:1,6
31:11 37:3,14
45:8 51:24
52:15,24 53:6
53:13,21 54:5
54:12,18 55:2
55:11 56:4,9
56:16 58:20
59:9 61:10
62:6,14,16
63:21 64:5,12
64:19,24 69:1
69:10 70:3
71:4 72:12
observations
15:13
obtained 21:2
34:5 44:19
occur 36:5,6
October 1:18
3:14 14:13
33:10 61:13
62:10 63:11

65:13 67:9
68:1,13 72:10
73:12 75:8
off-shifts 15:12
16:1 35:22
36:6 71:24
office's 63:20
officer 57:22,24
58:1,6,11,22
59:8 61:4,7
69:18,21 71:9
71:11
officers 58:15
official 11:20
63:20
officially 63:15
Oh 11:18 14:21
23:20 27:19
42:3 43:3 69:5
okay 6:12,19,24
7:6,9 8:3,9 9:3
9:10,13,20
10:6,23 13:1,6
14:3,11,15,24
14:22 15:3,5,6
15:7 16:6,11
16:18,19 17:11
17:12,19 18:2
18:12,16,23,24
19:10,17 20:1
20:14,23 21:7
21:12,17,24
22:8 23:20
24:3,22 25:2,3
25:7,9,12,22
26:15 27:5,15
27:22 28:3,5,6
28:14 29:19
30:8,13,16
32:5,15,20
33:1,16 34:10
34:19 35:3,13
36:3,9 37:21
38:1,5,11 39:2
39:23 40:2,22

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 7

40:23 42:10
43:22,23 44:21
45:12,18,23
46:8 47:5,16
49:16 50:11,14
50:23 52:6,10
52:21 53:10,18
55:7 56:8,20
57:11 60:4,20
61:16,22 62:13
63:10 64:4,9
65:23 66:9
69:17 70:13
72:19
**once** 6:8 53:2
66:17
**ones** 58:8
**oops** 8:20
**open** 50:21
**opiate** 28:20
32:3,7
**opiates** 25:20
26:18,24 27:5
27:13 28:7
29:22,24 30:23
31:3,6,10,17
31:22
**opinion** 65:11
67:10
**oral** 10:1
**order** 41:7,14,16
**ordering** 35:11
**ordinary** 34:12
**organization**
10:8 59:1
63:23 64:2
**original** 75:2
**outside** 55:20
56:5,6 65:20
**overseeing** 12:13

———————
**P**
**P.C** 2:9
**p.m** 33:5,9,14
34:2,8 63:12

72:24
**page** 3:3,12
10:11 14:16,19
15:17,17 16:19
25:22 26:3
33:5,16,17,18
35:15,18 71:18
**pages** 13:16 25:1
**panel** 21:3,4,7,8
22:17,18,19,21
23:1,5,12,13
24:4,8 25:13
25:13,14 34:13
34:14 39:8,11
41:4 42:11
**paragraph** 9:23
10:3 15:8,18
16:17 63:12
**parameters**
61:20 64:7
**paraphrasing**
15:21
**Park** 6:1
**PARKS** 2:2
**part** 18:1,14,21
19:2,12 20:8
20:18 21:9
22:12 34:21
35:4,16 37:11
37:23,23 38:10
43:24 45:15
51:18
**particular** 23:2
23:13 24:5,9
25:16 30:23
32:14 34:7
45:22 63:5
65:11 69:23
70:14
**parties** 74:18
**Pasquini** 1:12
3:2 5:1,7,15,19
6:7 9:1,16 10:1
10:18 11:17
13:6,19 14:3

20:4 24:22
25:9 33:3
34:17 56:18
59:11,22 60:4
64:14 67:1,18
67:21 68:19,21
69:17 71:20
72:4,22 73:10
73:17 74:5
**Pasquini's** 67:10
**patience** 24:19
**patient** 12:10
27:1,11 28:6
28:15 29:20
31:3 32:7
42:17 46:21
47:5,7,11,14
47:18 48:4,7
48:14,17 49:4
49:10 52:13,21
53:2,5,12,16
53:20 54:3,24
56:15 57:19
**patient's** 28:17
28:20 31:10,18
31:22 46:22
47:2,15,24
48:11,24 56:5
56:6 57:19
**pause** 8:21
**percipient** 61:12
62:20 63:7
65:14
**perform** 69:8
**performed**
39:20,24 40:16
**permissible**
68:22
**person** 6:15 8:2
19:6 24:9 46:5
46:5,19 49:14
58:1
**person's** 23:6,14
24:5 25:17
69:24

**personal** 6:16
65:6
**personally** 35:14
**personnel** 37:10
**pertained** 67:9
**pertaining** 1:15
**PETER** 2:3
**phlebotomy**
22:3
**physical** 15:14
**physician** 60:21
**physicians** 58:9
**pick** 28:11 30:15
**picked** 28:12
**pkatsaros@ha...**
2:6
**place** 11:11 50:4
52:4 68:1
74:14
**plaintiff** 1:4,12
2:7 4:18 5:2
73:4
**plaintiff's** 67:4
67:13
**planning** 8:17
**plans** 6:3
**plastic** 46:13,14
46:15,16
**please** 4:15 5:14
5:22 7:17 8:7
9:14 13:4,21
24:20 57:8,10
**points** 67:22
**policies** 10:14
12:17,20 19:11
51:10 54:16
55:4 62:1,22
65:8 66:14,20
67:2 68:7,8,11
68:15,22
**policy** 3:13
12:23 13:8,11
14:4,4,9,12
15:9,23 16:13
16:15,21 17:3

17:5,13 34:24
35:2,20 36:5
43:9,14 44:8
44:22 45:1
54:20 56:20
57:3,4,5,16
62:2 63:3,20
64:4 65:5,9,18
67:24 69:6
71:23 72:9
**portion** 33:18
49:6
**position** 67:6
**positive** 25:21
26:24 27:9,11
27:18,18,21
28:8 29:8
30:24 31:5
36:21 37:6,16
38:23 43:8
44:12 46:18
50:1 56:22
57:20 63:14
**possible** 15:12
23:9,11 28:19
29:22 56:19
**pour** 50:19
**practice** 54:2,7,9
54:24 55:13
56:14 63:3
69:6,15
**practices** 10:13
45:5 55:9,14
55:22 62:1,22
62:24 68:22
**preceding** 19:23
32:23 66:7
**Precise** 4:7
**preparation**
9:11
**prepare** 9:5
**prepared** 10:20
55:8 66:13,17
**prescribed** 70:6
70:11

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

prescription
44:4,11 56:24
57:19 58:4
63:14
prescriptions
70:15
presence 28:16
28:20 29:23
30:23 39:16
53:5,12,20
54:3 56:23
57:18
present 10:17
23:2,3,14,15
31:18 39:9,9
49:4 58:5
previously 9:17
13:7 24:23
prior 4:1 24:10
60:15
private 52:14
privileged 9:4
probably 41:17
54:14
procedure 1:14
51:21 54:20
procedures
51:11 54:17
66:15
proceed 4:8 30:5
process 20:8
47:1
produce 42:11
produced 50:11
professional
1:18 50:9
75:11
professionals
58:16
pronounce 5:16
protocol 53:8
protocols 72:9
provided 33:14
50:7
providing 46:5

Public 73:24
pull 13:3 71:17
purposes 68:24
69:9
pursuant 1:13
1:13 4:8
put 47:9,16
48:15 49:18
56:2 57:5
puts 47:5,22

Q
qualification
58:8
qualified 43:4
qualify 18:19
quantitative
21:4,8 22:17
22:21 24:3,8
25:13 34:13
36:22 37:7,18
38:20 39:1,19
39:24 40:3,12
41:4,11 43:10
43:15 68:23
69:8
quantitatively
39:12
quantity 31:9
Quest 36:18
38:16,19 39:5
39:8,11,16
40:1,2,7,12
42:6,10 50:8
50:12
question 8:6,8
8:13 14:11
16:20,21 17:5
17:7 20:15,16
20:17 23:19
28:1 29:11,18
29:20 32:5
38:19 39:10
42:15 51:19
52:21 57:4,13

57:15 61:15,24
64:20 65:3
67:23 68:5
69:2,11 70:4
71:5 72:13
questioning 7:2
62:12 63:4
67:7,8
questions 7:4,5
7:9 8:1 25:1
66:10,14,20
67:17
quick 19:18
quickly 14:1
42:10
quote 16:7,9
17:4 18:5
54:20 63:13,16

R
rapid 36:18,21
37:4,15 38:16
38:22 39:5
42:6,9,11,12
42:14,20 46:16
read 10:12 16:12
17:13 35:15,16
60:1 73:13
ready 9:8
real 14:11
really 6:21 29:4
41:15,17 43:12
55:3
reason 15:9
64:16
reasons 66:21
recall 6:10,12,24
13:2 31:23
32:12 66:11,16
66:22
receive 45:13,19
received 60:9
68:16
recess 19:21
32:21 66:5

recognize 59:23
reconsider 62:5
record 4:11,16
5:8,14,21 7:12
7:19 8:3,22
10:12 20:2
30:7 51:2,7
recorded 74:8
reduced 74:9
reference 13:19
14:22
referring 15:4
reflect 60:9
refresh 54:19
regarding 4:9
10:2 12:5
34:24 45:19
58:23 59:1
66:14 68:12
Registered 1:18
75:11
regular 22:24
23:5,12 25:12
25:14 34:13
related 51:7
relates 57:16
relating 10:14
12:17 45:6
51:11 56:21
62:1
relation 61:8
66:15
relative 74:17,18
remember 20:9
remote 4:9
remotely 1:16
2:7,13 4:14
74:6,8
reorient 17:11
repeat 16:20
20:16 29:11
57:12 59:11
64:14
rephrase 8:9
report 15:24

29:23 35:21
36:22 71:23
reported 1:23
15:11
reporter 1:17,18
4:5,6,12 7:11
8:23 25:4
72:20 75:10,11
Reporting 4:7
reports 30:23
57:18
representation
65:17
representative
10:1 62:21
reproduced 75:5
required 15:10
15:23 35:21
53:4,11,19,23
71:23
requirements
10:15 11:11
12:5 44:22
45:2 54:2 67:5
68:12
requiring 69:7
reservation
67:14,15
reserve 62:14
66:11,22
residential 5:24
resources 3:13
13:8 14:4
15:22 35:19
71:22
respect 23:1
55:9 67:3
respond 7:13
13:24 15:20
67:1
responded 20:11
responds 13:16
response 7:10
responsibilities
11:9,16

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

**responsibility** 12:13 15:19 75:4
**responsible** 71:11,14
**result** 3:15 25:11 25:12 26:24 27:16,21 31:5 33:19 34:1 37:5,7,16,18 37:19 38:22,22 38:24 42:18 44:12 50:1,11 50:15 51:4 56:22 57:1,20 69:18 70:21
**results** 10:16 23:12,13 30:22 31:17 33:13,14 40:3,6,12 42:11,16 43:4 57:16 58:2,5 58:18,24 59:2 59:4,6 71:1
**return** 37:7
**returned** 37:18
**returning** 6:23
**review** 57:21,23 58:1,6,10,15 58:22 59:8 61:4,7 63:19 66:1
**reviewed** 68:2
**reviews** 69:19
**rid** 50:20
**right** 7:22 9:16 10:10 20:12 21:5 22:2,15 23:7 24:6,19 25:22,23 26:3 26:8,17 27:2 28:2 30:17,24 34:22 36:7,10 36:23 37:2,13 38:7,8,14

39:10 40:4,9 40:15,17,19 41:13 42:21 46:23 47:6,20 48:1,4,21 50:2 51:19 55:23 56:3,15 58:12 59:13,16 60:6 61:4,9 66:11 66:22
**right-hand** 14:24 26:6
**rise** 6:20
**role** 61:18
**Roman** 14:16 15:8 16:17
**room** 35:10 41:6 47:14 48:7 52:14,17,18 55:5,15,19,20 55:20 56:6 67:6 69:16
**RPR** 1:23 74:4
**Rule** 4:9
**rules** 1:14 7:3
**run** 39:5 42:16 43:1,9,15
**runs** 43:6

_____

**S**

**safety** 12:9
**sample** 21:22,23 39:2,19,24 40:3 45:14,20 46:1,9 47:3,6 47:12,15 48:4 48:7,15,17 50:24 51:3,8 51:19,23 52:13 52:22 53:3,4 54:4,10,11 55:1 56:2
**samples** 10:16 50:5 51:12 55:10

**saying** 39:15 42:19 62:16 64:17
**says** 9:22 10:13 15:8,18,21 16:6,24 17:3 17:13 23:1 26:7,18,20 27:5 33:5,19 33:20 35:19 63:13 64:10
**scenario** 40:24 55:19
**scientifically** 19:5
**scientist** 19:4,8 23:22
**scope** 61:11 63:6 65:1,20 67:7
**screen** 3:15 9:17 21:3,4,7,8 22:16,17,18,19 23:1,5,12,13 25:11 34:12 36:18,20 37:5 37:15,24 38:10 38:13,17 39:6 40:13,21 41:2 41:11,24 42:4 42:6,11 43:2,7 44:1,10,13,23 55:10,14 56:21 56:22 57:17,17 58:3,16,18,24 59:2,4,6 61:8
**screening** 18:19 18:24 19:1,12 19:14 20:6,7 20:18,20 22:11 36:13,16
**scroll** 10:10 13:15 16:16 25:5,6,19 57:8 57:9
**seal** 46:6 47:7,19

47:19,22,24 53:4,19 54:3
**sealed** 44:19 46:18 47:4 48:10,18 49:18 49:21
**second** 33:16 66:18 71:21
**see** 9:21 10:4,17 14:17,18,20 15:1,15 16:4,9 16:24 17:17 23:11 25:19 26:10,12,18,21 27:5 33:6,18 36:1 46:17 57:5 63:17
**seen** 9:18
**send** 36:22 38:23 39:18,21,23 42:13 46:7 50:12
**sense** 18:2
**sent** 37:6,17 44:20 49:24 50:6 57:21 60:9
**sentence** 10:4 71:21
**serve** 61:7
**services** 12:1,8 12:12 15:24 35:21 36:5,10 36:13 37:1,11 37:22 38:1,10 38:12 39:18,21 40:17,22 42:7 43:23 44:1 46:10 50:5 51:13,18 71:24
**set** 41:14,16 60:16 75:8
**setting** 44:22
**share** 71:2,7
**Shorthand** 1:17

4:12 75:10
**show** 22:19 23:13 27:17,17 29:6,6,10 44:5
**showed** 30:18
**showing** 13:6 22:20 24:22 31:2
**shown** 14:5
**shows** 26:24 56:22
**side** 26:6
**signature** 72:20 73:14
**signed** 49:7,10 49:12,14 75:3
**sinus** 32:18
**sit** 41:9 43:13 55:8
**site** 41:24
**situation** 15:20 44:2 70:6
**six** 38:19 39:8,11 39:16 42:10
**six-panel** 36:18 37:5 38:16 39:5 42:6
**slip** 12:10
**small** 23:14
**somebody** 21:24
**someone's** 23:24
**somewhat** 6:24
**sorry** 14:18 21:23 23:20 32:16 33:13 36:10 39:10 57:2,12
**speak** 9:10 54:6
**speaking** 8:2 55:17
**special** 45:16,19 46:4 58:16
**specialties** 61:2
**specialty** 60:23
**specific** 32:1

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

| | | | | |
|---|---|---|---|---|
| 63:22 64:1 | 74:9 | 28:17,20 29:22 | 74:5 | 62:3,20 63:7,8 |
| **specifically** | **step** 47:17 | 32:8 | **term** 44:14,17 | 67:22 74:13 |
| 12:17 30:4 | **steps** 63:1 | **systems** 45:19 | **terminology** | **testing** 10:14,16 |
| 31:24 65:4,16 | **sticking** 65:21 | ——————— | 45:10 | 10:16 12:14,18 |
| **specifics** 64:6 | **Street** 2:4 | **T** | **terms** 34:16 | 13:12 16:8 |
| **specified** 74:14 | **strike** 68:20 | **table** 26:2,17 | **test** 18:16,19,19 | 17:4,6,9,16,21 |
| **specify** 67:4 | 71:10 | 27:5,6 | 19:5,14 20:6 | 18:1,4,6,8,9,13 |
| **specimen** 22:23 | **subject** 13:9 | **take** 8:17,19 | 20:18 21:21,24 | 18:20 21:16,17 |
| 34:5,7 38:23 | **subjected** 16:14 | 9:23 11:13 | 22:4,5,6,10 | 21:19 32:14 |
| 44:19 46:3,6 | 16:22 17:14 | 19:18 22:1 | 24:4,10,14 | 39:24 40:11,16 |
| 46:11 47:4,20 | **Subscribed** | 24:18,24 32:17 | 26:24 27:16,21 | 61:19 62:2,23 |
| 49:1,2,15,17 | 73:20 | 40:11,14 42:16 | 28:8,16,19 | 66:15 67:3,5 |
| 49:19,20,24 | **substance** 25:17 | 43:1 51:19 | 29:5,21,23 | 67:24 72:3,5 |
| 50:9,12,14,20 | 27:8,23 28:16 | 57:11 58:3 | 30:18,23 31:2 | **tests** 18:12,24 |
| 53:12,15,19 | 32:1,14 39:13 | 59:13,20 60:1 | 31:6,14,16,20 | 19:1,12 20:7 |
| 55:4,16 56:11 | 39:17 40:8 | 62:14 65:23 | 31:23 32:6 | 20:20,24 21:5 |
| 56:14 58:5 | 44:4 56:24 | **taken** 1:16 19:21 | 33:9,11 34:3 | 21:9,12,13 |
| 59:4 69:24 | 57:18 69:23 | 21:22 32:21 | 35:6 36:13,16 | 22:9,11,16 |
| 70:19 | 70:8,19 72:7 | 33:9,11 41:1 | 36:20,24 37:2 | 34:21 35:1,4 |
| **specimen's** | **substances** 26:6 | 51:8 63:1 66:5 | 37:5,10 38:11 | **Thank** 14:2 |
| 49:18 | **Suite** 2:4,11 | 70:8 73:12 | 38:13,17,19,20 | 72:22 |
| **specimens** 21:1 | **supervisor** 15:12 | **takes** 43:3 | 38:21 39:19 | **things** 12:11 |
| 54:3 | 15:19 | **talk** 15:4 34:10 | 41:12 42:11,14 | 18:4 |
| **speculate** 17:9 | **supposed** 43:15 | 46:8 61:17 | 42:15,16,20,24 | **think** 8:20 11:15 |
| 23:21 30:12 | **Supreme** 4:9 | **talked** 51:17,21 | 43:2,4,8,10,15 | 17:8 23:22,23 |
| 41:19 | **sure** 5:15,23 | **talking** 7:23 | 43:16 44:6 | 28:10 29:9 |
| **speculating** | 7:22 11:10 | 14:23 27:19 | 45:3,7,22 46:6 | 30:14,16 32:8 |
| 30:16 | 13:17 16:24 | 40:16 | 46:17 50:2,11 | 33:13 34:1,12 |
| **spell** 5:21 | 19:3,16,20 | **tell** 7:1 8:7,11 | 57:1 59:2 | 35:2 37:9 |
| **spill** 53:24 | 21:3 23:22 | 9:3,5 10:24 | 63:14,15 68:23 | 61:11 62:4 |
| **SS** 74:1 | 29:12,15 30:19 | 13:21 20:23 | 69:9,18,22 | 63:22,23 65:19 |
| **stage** 47:1 | 32:19 35:9 | 22:16 23:6 | 70:21 71:1 | 65:20 |
| **standard** 54:24 | 37:21 41:16 | 24:4,9,12 25:4 | 72:5 | **third** 15:7 16:19 |
| **stands** 26:14 | 45:15 46:11 | 25:10,15 30:12 | **tested** 16:15,23 | **thoroughly** |
| **start** 22:4 23:10 | 47:10 57:7 | 30:20 31:5,9 | 29:20 46:5,19 | 13:24 |
| 52:11 | 58:7 66:2,24 | 32:7 39:8,12 | **testee's** 23:16 | **thoughts** 67:10 |
| **started** 45:22 | **suspected** 15:10 | 40:7 55:13 | **testified** 5:4 64:9 | **throw** 50:19 |
| **state** 4:15 5:14 | 15:23 35:20 | 57:23 59:23 | 67:2 69:11,17 | **Thrown** 50:18 |
| 30:6 74:1 | 71:22 | **tells** 24:13 44:3 | **testify** 10:20 | **tightened** 47:10 |
| **States** 1:1,14 | **sworn** 4:23 5:3 | **ten** 6:11 | 55:8 61:12 | **time** 8:2 16:1 |
| 73:1 | 73:20 74:6 | **Teresa** 1:12 3:2 | 74:6 | 22:22 24:14,16 |
| **status** 6:22 | **symptoms** 15:14 | 5:1,15,19,20 | **testifying** 10:7 | 32:12 34:2 |
| 33:19,24 | **syringe** 22:1 | 10:1 14:8 | 62:21 65:7 | 35:23 38:8 |
| **stemming** 66:20 | **system** 19:6 23:7 | 61:14 62:10 | **testimony** 26:1 | 48:10 63:13 |
| **stenographica...** | 24:5,13 25:17 | 64:20 73:10,17 | 28:14 34:19 | 66:10,12 68:8 |

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

68:13,17 70:15
72:1,18,23
74:14
**times** 60:9
**title** 11:3
**today** 5:10 7:3
7:12 8:3,15 9:6
9:8 10:6,21
15:3 34:20
41:9 43:13
55:8
**today's** 9:11,22
61:20
**top** 12:23 15:18
**topic** 10:12,20
61:21,24 62:5
65:1,12,21
67:8
**tracking** 49:22
**trained** 45:22,24
**training** 45:13
45:16,19 58:17
**transcript** 73:13
74:12,13
**transcription**
74:10
**transcripts** 75:3
75:3
**transpired** 62:10
**treated** 59:2
**trips** 12:10
**true** 74:12
**truth** 74:6,7,7
**try** 7:16,17,22
38:7
**trying** 27:4,20
**turn** 71:20
**two** 22:8 24:24
66:12,21
**two-minute**
32:17
**type** 35:12 56:13
**typed** 75:2

─────────────
**U**
─────────────

**uh-huh** 7:18
**uh-uh** 7:18
**unattended**
54:11 55:1
56:2
**undergo** 41:2
**undergoes** 40:20
**understand** 7:7
7:14,19 8:7,8
8:12,13 10:6
26:1 27:19
35:13 37:21
38:1 44:17
67:14
**understanding**
17:24 19:7
68:19
**unit** 27:2 29:13
**United** 1:1,14
73:1
**units** 26:9
**UNIVERSITY**
1:7 73:6
**unlabeled** 54:11
54:14 55:1
56:2
**unquote** 18:5
**upper** 33:4,17
**urine** 3:15 20:18
20:20 21:1,5,9
21:12 22:9,15
22:20,22 23:14
23:15 25:11,13
25:13 27:2,9
27:13 28:7
29:24 31:3,7
31:10,18,22
34:12 36:19
37:24 38:13
39:2,13,17,18
39:23 40:3,8
40:12,20 41:2
41:11,24 42:4
43:1 44:1,9,23
45:14,20,24

46:9,12 47:5
47:12,15 48:3
48:15 50:24
51:3,8,11,19
51:22 52:13
53:2 54:3,4,10
55:1,10 56:1
56:21,22 57:17
57:17,19 58:2
58:15,24 59:6
61:8
**urine-based**
45:3,6
**use** 19:11 35:1
42:5,9 45:17
45:21,22 46:4
52:2,2 70:21
70:22
**Use/Abuse** 13:10
**uses** 22:1 42:5
42:20,23

─────────────
**V**
─────────────

**vaccine** 11:12
12:6
**valid** 56:24
**verbally** 7:14
**version** 43:1
**versus** 43:16
69:8
**vessel** 46:8
**videoconference**
1:11
**view** 66:18
**violated** 15:10
**violating** 15:23
35:20 71:22
**violation** 15:10
**vs** 1:5 73:5

─────────────
**W**
─────────────

**Wait** 13:14
**want** 9:1 15:7
17:9 25:4 30:9
30:11 34:10
37:9 41:19

44:5 61:17
62:23 67:21
**wasn't** 27:23
**way** 7:19 29:3
43:19 44:7
48:3
**ways** 19:5
**we'll** 7:19 8:16
8:18 62:14
65:23
**we're** 5:10 9:16
9:23 10:11
24:22 25:22
42:12 61:11,19
62:13 66:21
**we've** 9:17 13:7
24:23 40:15
**weigh** 58:15
**weight** 23:24
**welcome** 35:15
**Wendy** 1:3 5:10
61:8 73:3
**went** 38:3,4
**West** 2:4
**WHEREOF**
75:7
**witness** 4:13,23
5:2 14:2,9 25:6
25:7 28:23
30:2,8 31:12
37:4,15 45:9
48:14,17 51:15
52:1,16 53:7
53:14,22 54:6
54:13,19 55:3
55:12 56:5,10
57:8,9,10
59:18 60:3
61:13,16,23
62:20 63:7,22
64:6,23 65:2
65:15 66:12,13
66:17,19,23
69:11 70:5
71:6 72:14

74:14 75:7
**witness'** 62:3
**witnessed** 44:19
**word** 59:1
**words** 17:6 40:6
56:13,23
**work** 6:17,18,23
11:13,13 36:10
**worked** 52:17
58:8,11 60:15
60:18
**workers'** 11:13
12:6
**works** 49:13
**wouldn't** 23:16
23:20,21 24:1
24:14 30:15
43:4 55:16
56:1,8,10
**writing** 7:11
**written** 44:21
68:11 72:8
**wrong** 56:14,15

─────────────
**X**
─────────────

**X** 3:1 24:13

─────────────
**Y**
─────────────

**yeah** 16:21
20:17 27:4,19
30:11 35:13
38:5 52:16
54:6 57:4,15
62:7 69:15
**year** 6:4 11:7
**years** 6:10,11

─────────────
**Z**
─────────────

─────────────
**0**
─────────────

**084-002466** 1:23
75:11

─────────────
**1**
─────────────

**1** 10:17 33:5
73:12

Teresa Pasquini
Wendy Lohmeier v. Gottlieb Memorial Hospital

Page 12

**10-12-2018** 33:5
33:20
**10:00** 1:19
**10:31** 19:22
**10:37** 19:22
**10:57** 32:22
**11.13** 3:13 13:8
14:5
**11:03** 32:22
**11:52** 66:6
**11:58** 66:6
**12** 14:13
**12:08** 72:24
**12:32** 63:12
**12th** 33:10,15
**133** 3:13
**150** 2:10

──── **2** ────
**2** 14:19 33:5,17
33:17,18
**20:45** 33:20 34:2
**200** 2:4 6:1 28:6
**2000** 11:7
**2016** 10:17
**2018** 3:14 14:13
61:13 62:10
63:12 65:13
67:9 68:1,13
72:11
**2019-cv-8136**
1:5 73:5
**2021** 1:19 73:12
73:21 75:8
**206(h)** 4:9
**20682** 1:24
**24** 3:15 40:14
**2500** 2:11
**26** 3:14 63:12
**2700** 2:4

──── **3** ────
**3** 15:17 35:15,18
71:18
**30(b)(6)** 63:6
67:3

**300** 26:20 27:1,6
27:12,14,15
28:21 29:21
**312-637-3000**
2:5
**312-787-4949**
2:12
**32** 3:14 4:2
59:21,22 60:8
61:6 66:21

──── **4** ────
**4** 14:19 15:18
35:15,18 71:18
**44** 3:15 4:2
24:20,23 33:4

──── **5** ────
**5** 3:5 10:11
**53** 3:16 4:3 9:14
9:18
**59** 3:14

──── **6** ────
**60160** 6:2
**60601** 2:11
**60606** 2:5
**67** 3:7

──── **7** ────
**7** 3:13 4:2 10:3
10:12 13:3,7
14:5 35:15,18
57:7 61:11,21
65:1,12,21
67:8 68:1
71:18

──── **8** ────
**8:45** 34:2,8
**8th** 75:8

──── **9** ────
**9** 3:16
**9:15** 33:5,9,14